Opinion approved by the Court.

GUY MINOR V. STATE.

No. 24257. March 23, 1949.
Rehearing Denied April 20, 1949.

HAWKINS, Presiding Judge, dissenting.

*Wm. B. Miller,* and *A. S. Baskett,* Dallas, for appellant.

*Will R. Wilson, Jr.,* Criminal District Attorney, *George P. Blackburn,* First Assistant District Attorney and *Waller* M. *Collie, Jr.,* Assistant District Attorney, Dallas, and *Ernest S. Goens,* State's Attorney, Austin, for the state.

GRAVES, Judge.

The offense is burglary. The punishment assessed is confinement in the state penitentiary for a term of two years.

The record reflects that on the night of November 14, 1948, between the hours of 1:30 and 3:00 a. m., the cafe of David Bower, located near Love Field in the city of Dallas, was burglarized and a slot machine was taken therefrom. About the time of the burglary, two city policemen were patrolling that area. When they passed along the street near the cafe, they noticed an automobile parked in the driveway of the cafe. They drove a short distance to an intersection of another street, turned off the lights on their car, and then turned around, at which time they noticed a man run from the cafe, enter the parked car and hurriedly drive away. They pursued the fleeing automobile which, according to the speedometer of the police car, was at one time traveling 80 miles per hour. They finally overtook the fleeing automobile after it had slipped into a ditch along the side of the highway. They arrested appellant and his companion, Wesley Bentley, outside of the city limits fo Dallas and searched their car without a warrant of arrest or a search warrant. The search of the car revealed a slot machine, a hammer, a bolt cutter, a tire tool, and an electrical conduit.

The owner of the cafe was notified of the burglary, and he immediately went to his cafe and found that the padlock on the front door had been cut; that the building had been entered, and that a slot machine was missing. He identified the slot ma-

chine found by the policemen in the car in which appellant and his companion fled from the cafe in question.

Appellant did not testify but proved by one, Clifton Barlow, that he (Barlow) loaned his car to appellant on the night in question; that the tools found by the policemen in the automobile belonged to him; that they had been in the car for some time.

Appellant brings forward two complaints by separate bills of exceptions. These bills may well be considered and disposed of together because they involve the same legal questions, that is, whether or not the policemen had a legal right to arrest him outside the city limits without a warrant and search his automobile.

Appellant does not claim that he did not violate the speed law by driving the automobile on the streets of the city and on the highway at night at a rate of speed in excess of 55 miles per hour, to-wit: 80 miles per hour. His contention seems to be that although he violated the speed law, the city policemen were not authorized by law to arrest him outside the city limits, notwithstanding Sec. 153, Art. 6701d, Vernon's Ann. Civ. St., expressly authorizes the arrest without warrant of any person found committing a violation of any provision of this act. Art. 803, P. C., also authorizes the arrest without warrant of any person found committing a violation of any provision of the preceding articles of this chapter. Therefore, under the facts of this case, the officers had ample authority to arrest appellant for a violation of the speed law without warrant within the city, but the paramount and controlling issue is, did the city policemen have a legal right to arrest him beyond the city limits and search his automobile? If so, then the evidence found in the automobile as a result of a search thereof became admissible on his trial for burglary, otherwise not, since Art. 727a, C. C. P., prohibits the use of any evidence obtained in violation of any provision of the constitution or laws of the State of Texas, or of the Constitution of the United States.

Article 999, R. C. S., 1925, defines and sets forth the duties of the chief of police of a city and therein gives him "like power with the sheriff of the county to execute warrants * * *. It shall be his duty to arrest, without warrant, all violators of the public peace * * *. In the prevention and suppression of crime and arrest of offenders, he shall have, possess and execute like power, authority, and jurisdiction as the sheriff."

The question then arises, what is the jurisdiction of the sheriff? He is a peace officer and is in the same category as a city marshal and a policeman. Art. 36, C. C. P. It is his duty to preserve the peace and arrest all offenders, and when authorized by the Code, he shall interfere, without warrant, to prevent and suppress crime.

It is shown that under a city ordinance of Dallas, evidently passed under authority of Art. 214, C. C. P., appellant was found in a suspicious place and under circumstances rendering him susceptible to arrest without the presence of a warrant therefor.

The facts show that two city policemen of Dallas, while cruising through the city at about 3:00 o'clock in the morning, passed a cafe at 5108 Maple Street. They noticed a car parked in close proximity to this cafe which was closed at such time. Becoming suspicious thereof, they turned off their lights and turned around at the end of the block, whereupon a man came out of the cafe, got in the car and started rapidly away, skidding the tires. The policemen started after such car and followed the same at a high rate of speed through many streets of the city, sometimes reaching a speed of 80 miles per hour. Eventually, appellant and his companion skidded their car into a ditch and were then apprehended by the officers. Upon a search of the car, the officers found certain tools that could be useful in a forced entry to a building, as well as a certain slot machine, numbered 317,117, which it was later shown to have come out of this cafe in a burglarious entry. The point at which this chase terminated was about one mile outside of the city limits of Dallas, the race having continued for some twelve miles.

That the action of such officers was legal when they endeavored to arrest without warrant these men at the cafe will doubtless be conceded by virtue of the city ordinance; and again, when appellant took off in his car and increased his speed to an unlawful one; and again, these officers had a further right to arrest him without a warrant. Art. 803, P. C. See Scott v. State, 134 Tex. Cr. R. 193, 114 S. W. (2d) 565; Linthicum v. State, 134 Tex. Cr. R. 608, 116 S. W. (2d) 714, and many cases there cited.

The crucial point herein is, did the arresting peace officer, being policemen, have authority to finally complete the arrest at a point where the fleeing parties had passed out of the city and over its boundary, or, in other words, does the ancient

ecclesiastical doctrine of sanctuary apply to such action upon their part?

It should be remembered that after the flight began, appellant and his companion were never out of the sight of the pursuing officers; that their arrest without warrant was lawfully initiated on the ground of suspicion; that upon their precipitate flight an additional right arose to arrest without warrant on account of their excessive speed which continued until it resulted in their apprehension and the finding of this recently stolen property outside the city limits. Or, in other words, when in legal and immediate pursuit of one suspected of and actually in violation of the law, shall a policeman in pursuit of such evildoer, stop in such immediate pursuit and allow the suspected one to pass over the line and defy such peace officers to take him into custody, and in the event of such malefactor being reduced to arrest, was such detention illegal and any evidence obtained therefrom illegally obtained and violative of the statute?

Our supreme court has written on this matter many years ago in Newburn v. Durham, et al, 88 Tex. Rep. 288, 31 S. W. 195, and therein laid down the doctrine that by virtue of our statutes the chief of police or city marshal has the same jurisdiction as the sheriff of the county in the prevention and suppression of crime. This statement is also found in Art. 999, R. C. S.

It may be of interest to show who are peace officers, and we, therefore, quote Art. 36, C. C. P., as follows:

"The following are 'peace officers:' the sheriff and his deputies, constable, the marshal or policeman of an incorporated town or city, the officers, non-commissioned officers and privates of the State ranger force, and any private person specially appointed to execute criminal process."

The duties and powers of a peace officer are shown by Art. 37, C. C. P., which reads as follows:

"It is the duty of every peace officer to preserve the peace within his jurisdiction. To effect this purpose, he shall use all lawful means. He shall, in every case where he is authorized by the provisions of this Code, interfere without warrant to prevent or suppress crime. He shall execute all lawful process issued to him by any magistrate or court. He shall give notice to some magistrate of all offenses committed within his juris-

diction, where he has good reason to believe there has been a violation of the penal law. He shall arrest offenders without warrant in every case where he is authorized by law, in order that they may be taken before the proper magistrate or court and be tried."

Undoubtedly these policemen were within the law when they initiated their effort to take appellant into their custody, and it should be evident that they were in process of a legal arrest in the beginning; and further, that another offense arose and an additional right to take appellant into custody came into being when he attained such a great speed on the streets and highways. Then the attempted arrest having been lawful, shall we say that because of excessive speed the wrongdoer reached a point over the city corporate line that the authority rightfully in being to arrest culminated in the midst of its being exercised? We cannot think so. When the right existed and was being exercised, the fact that such arrest was not culminated within the confines of the city should not keep the same from being a lawful detention. The statute above quoted says that a policeman is a peace officer. Art. 803, P. C. says: "Any peace officer is authorized to arrest without warrant any person found committing a violation of any provision of the preceding articles of this chapter." The preceding chapter is commonly called the "road law" and prohibits an excessive speed.

What we are holding herein is that where a police officer has a right to arrest without warrant for an offense committed within the confines of his city and initiates a pursuit of the malefactor, being in immediate pursuit, he can continue such pursuit, although such continuance leads him outside the corporate limits of the city, if necessary, his rights being the same as those of the sheriff in such event.

Therefore, we hold that the peace officer had the same power as the sheriff relative to his jurisdiction and could carry out his intended arrest of a person whom he was directly pursuing for an infraction of the law in such officer's presence.

This holding disposes of appellant's objections to the introduction of the matters found in his car. The arrest being lawful, the search of the car was also lawful.

The judgment of the trial court is affirmed.

BEAUCHAMP, Judge (concurring).

I am concurring in the opinion affirming this case because I think the city policemen had a right to make the arrest while they were in the city and they continuously pursued this right without any break in their effort, or in the effort of the appellant to escape. It was a continuous transaction. The fact that they crossed the city's boundary should make no difference. The right of sanctuary does not apply in this country.

I cannot subscribe to the implication that a city policeman has authority equal to that of the sheriff co-extensive with the bounds of the county. I see no reason for the statement in that paragraph holding that he has a right to continue the pursuit of the party beyond the limits of the city "and to the bounds of the county." I think he has a right to continue the pursuit regardless of the county lines so long as it is uninterrupted, within the State of Texas. The statute giving the policeman a right similar to that of the sheriff must be limited to the confines of the city boundary lines. He cannot go beyond the city limits to initiate the arrest.

With this modification I concur in the opinion affirming the judgment.

HAWKINS, Presiding Judge (dissenting).

My brethren have concluded that the police officers of the City of Dallas, having the legal right to arrest appellant for an offense committed within the city limits, and having undertaken to effect such arrest, and being prevented by the flight of appellant, had the right to pursue him and effect the arrest beyond the city limits. Regarding the question as most serious, and believing the soundness of the conclusion of my brethren subject to grave doubt, I deem it appropriate to express my views upon the point.

The general rule is stated in Ruling Case Law, Vol. 2, Sec. 27, p. 469, as follows: "A public officer appointed as a conservator of the peace for a particular county or municipality as a general rule has no official power to apprehend offenders beyond the boundaries of the county or district for which he has been appointed." This general rule has been recognized by this court in Henson v. State, 120 Tex. Cr. R. 176 (49 S. W. 2d 463); Weeks v. State, 132 Tex. Cr. R. 524 (106 S. W. 2d 275); and Irwin v. State, 147 Tex. Cr. R. 6 (177 S. W. 2d 970). The right of peace officers to arrest, especially without a warrant, is controlled by statute. It will be admitted that we have no provision in our Code of Criminal Procedure specifically covering the

situation here present, and it must be further admitted that the court cannot invade the province of the legislature and make a law to fit the case.

As we understand it, the main opinion is based largely upon the holding of our supreme court in Newburn v. Durham et al, 88 Tex. R. 288 (31 S. W. 195). At the time said case was decided, Art. 363, R. C. S., (1879) among other things, provided that, "* * * in the prevention and suppression of crime and arrest of offenders he (the city marshall or police officer) shall have, possess, and execute like power, authority, and jurisdiction as the sheriff of a county under the laws of the state." The supreme court construed this language to give to city officers the same authority to arrest and—to the same extent—as that which the sheriff had. I am doubtful about this construction. It would, it occurs to me, be more in keeping with other holdings of our court to have construed the statute to mean that within the limits of the municipality the authority of the city officers was the same as that of the sheriff in his county. However that may be, the question there was not the authority to arrest without a warrant beyond the city limits which is the question direcly before us here, and to determine that we must go to our statute, and we find it silent on the subject.

There is no question but that if a city officer is attempting an arrest which would be legal if effected in the city limits, but is prevented by flight of the offender, and the officer is in immediate and hot pursuit, his authority ought not to cease at the city limit, but the legality of an arrest consummated beyond the city limits is to my mind shrouded in doubt which ought to be cleared up. This, however, must be done by legislative act. The matter is called to the attention of the legislature in order that such action may be taken in the premises as may be thought proper.

Entertaining serious doubt as to the accuracy of the conclusions of my brethren, I most respectfully register my dissent.

ON APPELLANT'S MOTION FOR REHEARING.

BEAUCHAMP, Judge.

Appellant has filed a forceful motion for rehearing in which he contends that the right of the policemen to arrest without a warrant was terminated, in the instant case, when they reached the boundary of the city. A number of cases decided by this court are relied on as authority for this contention.

In the case of Weeks v. State, 106 S. W. (2d) 275, we find a holding which admittedly makes a general statement in accord with such contention. An analysis of the case shows, however, that the officers pursued Mrs. Weeks to arrest her within the city limits and continued this beyond the bounds of the city to search her car, as a result of which they obtained evidence which resulted in her conviction. The opinion then makes the statement that the authority to make the arrest terminated at the city's boundary line. This general statement was not necessary to a decision of the case. We think it was an erroneous statement and should not be followed. The officers never had a right to arrest Mrs. Weeks without a warrant within the city, under the information which led them to pursue her. The opinion should have so stated and it would necessarily have followed that they had no right to do so beyond the city limits. The general statement relied on by appellant in his motion for rehearing should not be followed and we decline to do so.

In discussing Art. 37 of the Code of Criminal Procedure the motion calls attention to the fact that it is made the duty of a policeman to "preserve the peace within his jurisdiction." This is in accord with the statement made in the original opinion and the concurring opinion. In the instant case the officers definitely had the right to pursue the appellant and to arrest him. There is no question but what this right existed so long as they were within the city. If the circumstances created by appellant forced the officer to go beyond the city limits to do that thing which they are charged with the duty of doing, it would be an illogical conclusion to say that he could take advantage of a condition which he created and defeat the ends of justice. Article 999 of the Revised Civil Statutes, in defining the territorial jurisdiction of a city marshal, may be further relied upon as authority for the policemen in the instant case, because appellant was "offending against the peace of said city." As distinguished from the Weeks case, the act of the policemen in beginning the pursuit was lawful, it was for the purpose of making the arrest for unlawful driving. We cannot agree with the contention in the motion that no part of the arrest took place within the city. The pursuit, continued beyond the bounds of the city, resulted in taking appellant into custody and all of their acts from the time the pursuit began until they had the custody of their prisoner constitute part and parcel of the act of the arrest. It did begin within the city and extended beyond it.

Further discussion in the motion relates to the holding in the opinion that they may pursue the offender to the county

line. As expressed in the concurring opinion, I see no reason for stopping at the county line. Certainly we cannot say the officers may invade the bounds of another country, or even another state of our government. The laws of the other state should be examined for that. The point is, I find nothing in our law to fix the limit of the pursuit in Texas. It would be a deterrent to law enforcement if we should fix one. I do not think we have such authority.

' It is our conclusion that the original opinion properly decided the case. It is immaterial that the different judges of the court did not agree on all of the language used, so long as they came to the same conclusion.

Appellant's motion for rehearing is overruled.

HAWKINS, Presiding Judge (dissenting).

My views as expressed in dissenting opinion of date March 23d, 1949, remain unchanged, and for the same reasons now express my dissent to overruling the motion for rehearing.