Ricardo Cortez LOPEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–82–0215–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

April 21, 1983.

Discretionary Review Granted
Sept. 21, 1983.

Don Ervin, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Houston, for appellee.

Before DUGGAN, JACK SMITH and LEVY, JJ.

## OPINION

JACK SMITH, Justice.

Appellant was convicted of possession of a controlled substance, heroin. Pursuant to an agreement with the State, two enhancement allegations were dismissed and punishment was assessed at twelve years confinement. The appellant raises three grounds of error on appeal.

The appellant first asserts that Pasadena police officers had no jurisdiction to initiate an arrest outside Pasadena city limits. He alleges that since he was arrested in Houston, his arrest was invalid. He also contends that the heroin seized as a result of his arrest should have been suppressed.

■ We do not agree with either of these contentions. Police officers have like powers, rights, authority and jurisdiction as are vested in city marshals. Tex.Rev.Civ.Stat. Ann. art. 998 (Vernon 1978). A city marshal's jurisdiction in the prevention and suppression of crime and arrest of offenders is as extensive as that of the sheriff. Tex. Rev.Civ.Stat.Ann. art 999 (Vernon 1978). A sheriff has county-wide jurisdiction. Tex.Code Crim.Pro.Ann. art. 2.17, (Vernon 1981). In the instant case the officers had jurisdiction to make the arrest because Pasadena and Houston are both located in Harris County. *Fort v. State,* 615 S.W.2d 738 (Tex.Cr.App.1981).

The appellant has cited *Irwin v. State,* 147 Tex.Cr. 6, 177 S.W.2d 970 (1944), to support his assertion that Pasadena police officers have no jurisdiction in Houston. *Irwin* is distinguishable because it was decided prior to the enactment of Article 999. Appellant's first ground of error is overruled.

The appellant asserts in his second and third grounds of error that the search and seizure of the heroin was not based on probable cause and, therefore, the evidence should have been suppressed.

The record reflects that Pasadena police officers were conducting a surveillance on a residence located in Houston. This operation was based on information that narcotics were being sold at the residence. At approximately 9:15 p.m., one of the officers observed Vincente Vega, a purported drug offender, standing on the front lawn of the residence. When Vega entered a car and began driving away, the two officers followed him. Vega drove to a 7-Eleven convenience store where he met the appellant. One of the officers then got out of his car and walked to a phone booth, which was approximately 20 feet away from Vega and

the appellant, to better observe their actions.

The officer saw Vega remove a cellophane packet from his right front pants pocket. The appellant then removed a cellophane packet from his left front pocket. The appellant and Vega exchanged these packets and examined them in the light. They then traded the packets back and the appellant reached into his rear pocket and removed a packet which he gave to Vega.

At this time, the two officers approached the men and identified themselves as police officers; whereupon the appellant threw the plastic container down at his feet. The officers then arrested the two men and seized the package.

At the hearing on the motion to suppress evidence, one of the officers testified that from his position near the phone booth, he could see that the packets contained a brown powdery substance. His observation of the two men, coupled with his experience as a police officer and the fact that he had observed Vega at a residence under surveillance for unlawful narcotics transactions, led him to believe that he was observing a drug transaction. This belief was the basis of his decision to arrest the men.

On cross-examination, the officer testified that Vega was a "known drug offender". However, he could not justify this statement from his notes.

After the officer reiterated his testimony that he could see the brown powdery substance from a distance of twenty feet, he was given an opportunity by appellant's counsel to view packets similar to those seized from the appellant. These packets were then taken about twenty feet from the officer and a gold chain was placed in one, two keys in another, and a matchbook in another. The officer was unable to identify the contents of the packets from that distance.

After the demonstration, the officer admitted that he could not tell whether the appellant was committing a misdemeanor or a felony offense when he arrested him. He further admitted that he did not know what the cellophane packages contained, even though he could see the contents, and that he arrested the men to find out what was in the packages.

The appellant first contends that the officers did not have probable cause to investigate Vega when they followed him to the 7-Eleven; therefore, the officers were not lawfully in a position to view the transaction.

The appellant's contention assumes that the officers did not have a lawful right to conduct a surveillance of Vega. We are of the opinion that this is an erroneous assumption. Neither probable cause nor reasonable suspicion are necessary to authorize a surveillance. *Hamilton v. State*, 590 S.W.2d 503 (Tex.Cr.App.1979).

The appellant also assumes that the officers' activity was an invasion of his reasonable expectation of privacy. Under both the federal and state constitutions, the question of whether the government's activity constitutes a search depends on whether the appellant has a reasonable expectation of privacy. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Green v. State*, 566 S.W.2d 578 (Tex.Cr.App.1978).

The facts of this case indicate that neither Vega nor the appellant had a reasonable expectation of privacy in their activity. Vega was first observed standing in the front yard of a residence. He then got into his car and drove down a public street to the open parking lot of a 7-Eleven convenience store. the activities of the appellant and Vega were then conducted in the open parking lot under a street light. Thus, this case is distinguishable from those cases where the defendant is in a public area, but in a booth or stall in which he had a reasonable expectation of privacy. *See, Buchanan v. State,* 471 S.W.2d 401 (Tex.Cr.App.1971).

The cases relied upon by the appellant involve an investigative detention by police officers without probable cause or a reasonable articulable suspicion. *See e.g., Armstrong v. State,* 550 S.W.2d 25, 30 (Tex.Cr.App.1977). In the instant case the officers

did not detain either Vega or appellant until after they had witnessed the transaction. Since this transaction occurred in a public place, under circumstances which did not imply that either appellant or Vega had a reasonable expectation of privacy, the officers' conduct did not constitute an unlawful search.

■ The appellant also contends that when the officers drew their guns, identified themselves, and placed the men in custody, they did not have probable cause to believe that the appellant and Vega were committing a crime.

The evidence does not support this contention. There is some evidence that Vega was known by the officers to be a drug offender. He and the appellant were observed in an open parking lot under a street light, exchanging cellophane packets which appeared to contain a brown, powdery substance. Both men were seen examining these packets in the light and exchanging the packets two times. After this, the appellant was observed giving Vega another plastic "baggie". It was not until these transactions were completed that the officers approached the two men. At that point, the appellant threw the "baggie" down at his feet. We are of the opinion that these events furnished the officers with probable cause.

■ Appellant's final contention is that the officers' warrantless search of the packets was unlawful. He asserts that the officers had possession and control of the packets and thus there was not an exigency under which they could search them without a warrant.

To support this contention, the appellant relies primarily upon *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) and *Robbins v. California,* 453 U.S. 420, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981). Those cases involve warrantless searches of sealed containers in which the contraband could not be seen. Further, in *Chadwick* the officers had more than adequate time to obtain a warrant and had inexplicably failed to do so.

The instant case is distinguishable from the *Chadwick* and *Robbins* line of cases. The containers in this case were transparent "baggies". The officer testified that he could see that the baggies contained a brown, powdery substance. We have not been cited to any cases which hold that a transparent container, in which the contraband can be seen, manifests a legitimate expectation of privacy as to the container's content.

The officers in the instant case did not move forward until they had probable cause. The circumstances were such that they could not obtain a warrant, and the clear "baggie" container manifested a minimal expectation of privacy by the two men.

We hold that the search of the packets by the officers did not violate the appellant's legitimate expectation of privacy. The appellant's grounds of errors two and three are overruled and the judgment of the trial court is affirmed.