Christopher M. LOVE, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 01–84–0243–CR, 01–84–0244–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 28, 1985.

Clinard J. Hanby, Haynes & Fullenweid-
er, Houston, for appellant.

John B. Holmes, Jr., Harris County Dist. Atty., Winston E. Cochran, Jr., Dan Krocker, Harris County Asst. Dist. Attys., Houston, for appellee.

Before EVANS, C.J., and COHEN and SMITH, JJ.

### OPINION

COHEN, Justice.

The appellant pleaded guilty to possession with intent to deliver a controlled substance in cause no. 392,502, and the Court assessed his punishment at 12 years imprisonment. In addition, the Court revoked his probation in cause no. 380,570 and assessed punishment of 10 years. The probation, for the offense of delivery of a controlled substance, was revoked solely because of the offense committed in cause no. 392,502.

He asserts that the controlled substance used against him was obtained during a warrantless arrest and search which were illegal because Pasadena city police lacked authority to arrest and search outside of Pasadena, in Houston. Thus, we must decide whether city officers have county-wide [1] or statewide power to make warrantless arrests.

#### A. *The Facts*

On November 14, 1983, Pasadena Officer Williams learned from a reliable informant that the appellant would be buying and selling mandrax tablets that night. The informant, who had talked with the appellant in the preceding 24 hours, stated where the appellant resided and identified the car that he drove. Officer Williams knew these statements were accurate, based on other information he had regarding the appellant. During the preceding year, Williams had heard from several sources that the appellant was dealing in narcotics. Williams ordered Officers Stewart and Standley to watch the appellant's Houston residence. Stewart saw the appellant and a female leave the residence and, as the informant had stated, they drove a blue 1982 Chevrolet Camaro hatchback automobile registered to the female. They went to a restaurant, stayed one hour and then drove to another house in Houston, followed by the officers who parked 200 yards away and watched with binoculars. The appellant approached a man standing in the yard, whereupon a tan car pulled up. The man in the yard walked to it, handed the driver money, and the driver handed him a large Fiesta grocery store bag. The tan car drove away, and the man put the grocery bag in a truck parked in his driveway. He talked to the appellant and then moved the grocery sack from the truck to the rear of the appellant's Camaro. The appellant then drove back to his residence, followed by at least three officers, and parked his car outside. He and the female entered the residence, leaving the grocery bag and its contents in the parked Camaro. Officer Williams believed that the appellant kept drugs in his car on occasion, because another informant, named in testimony, had admitted stealing 6,000 mandrax tablets from the appellant's vehicle.

One officer then left to return to Pasadena and obtain a search warrant for the parked car; however, the appellant and the female soon thereafter left the house and drove off, whereupon this officer returned in order to help pursue and arrest them. The appellant's car was heading in the general direction of the home of a suspected drug purchaser, who was a regular customer of the appellant according to other informants, when four Pasadena police in three cars stopped the appellant, arrested him and the female, searched the car, and found a Fiesta grocery store bag filled with 3,000 mandrax tablets. Officer Stewart had seen that the bag was a Fiesta bag before the arrest, and Officer Williams testified that Fiesta grocery store bags were often used to carry pills, and that he had made four arrests where the drug was contained in a Fiesta bag.

1. The city of Pasadena is in Harris County. The arrest occurred within the Houston city limits, a location also in Harris County. *See Fort v. State,* 615 S.W.2d 738 (Tex.Crim.App.1981).

All of the surveillance, as well as the arrest and the automobile search, occurred inside Harris County and inside the Houston city limits. The appellant's residence, the scene of a great deal of surveillance, was 5–6 miles outside the city limits of Pasadena. The appellant was never in Pasadena on November 14; nevertheless, the Pasadena officers were in Houston solely to pursue this investigation. No officers from the city of Houston, Harris County, or any other authority were involved. The officers testified that the appellant, who drove the Camaro at all times, was not stopped because he committed any traffic offense, but solely for the purpose of searching the car. The Pasadena officers had no search warrant and no arrest warrant, and they were aware that they were outside their city. In short, the entire narcotics division of the City of Pasadena Police Department was knowingly operating 5 to 6 miles outside of Pasadena, in Houston, for a period of 3 to 4 hours, without a warrant, without assistance from City of Houston, Harris County or State peace officers, while not in hot pursuit, and solely in order to investigate the appellant.

## B. *The Common-Law Rule*

Under the common law, a city police officer's power to arrest, with or without a warrant, ends at the city limits. *Buse v. State,* 435 S.W.2d 530 (Tex.Crim. App.1968); *Irwin v. State,* 147 Tex.Cr.R. 6, 177 S.W.2d 970 (1944); *Henson v. State,* 120 Tex.Cr.R. 176, 49 S.W.2d 463 (1932); *Jones v. State,* 26 Tex.App. 1, 9 S.W. 53 (1888); *Ledbetter v. State,* 23 Tex.App. 247, 5 S.W. 226 (1887). If the Code of Criminal Procedure, which generally governs warrantless arrests (see Chapter 14), fails to provide a rule of procedure, the rules of the common law apply and govern. Tex. Code Crim.P.Ann. art. 1.27 (Vernon 1977); *see also* Tex.Rev.Civ.Stat.Ann. art. 1 (Vernon 1963).

There are exceptions to the common-law rule that a city officer cannot arrest without warrant outside his city; however, they do not apply to this case. These officers were not engaged in "hot pursuit," *see Minor v. State,* 153 Tex.Cr.R. 242, 219 S.W.2d 467 (1949), nor did they observe the appellant commit any traffic offense within the statutory exceptions to the common-law rule. *See Christopher v. State,* 639 S.W.2d 932, 937 (Tex.Crim.App.1982) (op. on reh'g); *Hurley v. State,* 155 Tex.Cr.R. 315, 234 S.W.2d 1006 (1950).

## C. *The Lopez Decision*

In *Lopez v. State,* 652 S.W.2d 512 (Tex. App.—Houston [1st Dist.] 1983), a panel of this Court held that city police officers had general countywide authority to make warrantless arrests. *Lopez* was reversed on other grounds by the Court of Criminal Appeals. *Lopez v. State,* No. 509–83, March 28, 1984 (State's motion for rehearing pending).

The appellant asks that we reconsider our holding in *Lopez,* which was based on Tex.Rev.Civ.Stat.Ann. arts. 998 and 999 (Vernon Supp.1984). Article 998 provides that city police officers have the same authority as city marshals, and article 999 provides that city marshals have the same authority as sheriffs. Since sheriffs have countywide authority to make warrantless arrests, Tex.Code Crim.P.Ann. art. 2.17 (Vernon 1977), we reasoned that city marshals and city police officers also had countywide authority to make warrantless arrests. *Lopez* did not rely on exceptions to the common-law rule. Rather, it held that arts. 998 and 999 abrogated the common-law rule and permitted city officers to arrest countywide without warrant for any offense.

*Irwin v. State, supra,* which applied the common-law rule limiting a city officer's warrantless arrest power to the city limits, was distinguished in *Lopez* on the basis that it was decided in 1944, before the 1967 "enactment" of art. 999. *Lopez,* 652 S.W.2d at 513. This was error because article 999 was not enacted in 1967.

Article 999 was amended in 1967; it was enacted in 1875. *See* Acts 1875, p. 122; Tex.Rev.Civ.Stat.Ann. art. 999 (Vernon

1963). The 1911 enactment contained language identical to the present version, providing that, "in the prevention and suppression of crime and arrest of offenders, [the city marshal] shall have, possess, and execute like power, authority and jurisdiction as the sheriff." See "Historical Note" following art. 999 (Vernon 1963). This language, which was contained both in the 1875 enactment and in the 1967 amendment, was apparently contained in art. 999 at all times from 1876 to the present time.

Similarly, art. 998 was originally enacted in 1907 and provided that, "such officers [city police] shall have like powers, rights, and authority as are by said title vested in city marshals." Acts 1907, p. 299. The 1967 amendment added only the words "and jurisdiction" after the word "authority" in this sentence.

Thus, both articles 998 and 999 were enacted long before the 1944 *Irwin* decision. In fact, article 999 was cited in *Weeks v. State*, 132 Tex.Cr.R. 524, 106 S.W.2d 275, 276 (1937), where the Court wrote, "Article 999, R.C.S. 1925, seems to limit the legal authority of peace officers to their own bailiwick." This statement was criticized in *Minor v. State*, 219 S.W.2d at 471; however, despite the criticism, *Weeks* in 1937, *Irwin* in 1944, and *Buse* in 1968, all reversed convictions because city police officers lacked authority to arrest outside their city limits. More recently, in *Rozell v. State*, 662 S.W.2d 634, 636–37 (Tex.App. —Houston [14th Dist.] 1983, no pet.), the Court affirmed a conviction, but recognized the common-law limitation on a city officer's power, citing *Irwin* as authority. These decisions all recognized and applied the common-law rule, despite the fact that statutes very similar or identical to the present articles 998 and 999 were then in effect. None held, as we did in *Lopez*, that articles 998 and 999 gave city officers general countywide warrantless arrest powers.

The Texas rule prohibiting warrantless arrests and the reasons for that rule were stated by the Supreme Court in *Heath v. Boyd*, 141 Tex. 569, 175 S.W.2d 214 (1943):

Art. 1, sec. 9, of the Constitution of Texas, guarantees that the people shall be secure in their persons from all unreasonable seizures. Therefore, despite obiter dicta expressions to the contrary in a few cases, our courts, both civil and criminal, have consistently said that *the arrest of a citizen without warrant is an unreasonable seizure of his person, unless it is expressly authorized by statute* .... [T]he subject is thus exclusively regulated by the constitution and the statutes of this State.... This rule has two objects, namely (1) to protect the right of the citizen to his liberty, under the presumption of his innocence of all crime; and (2) to inform peace officers as to the limits of the authority with which they are invested.... *If the situation claimed to authorize an arrest without warrant does not come squarely within some [statutory exception], the authority does not exist, because the statutes are strictly construed.*

*Id.* 175 S.W.2d at 215–16 (emphasis added). *Accord Gant v. State*, 649 S.W.2d 30, 32 (Tex.Crim.App.1983). The Court of Criminal Appeals quoted with approval from *Heath v. Boyd* in *Honeycutt v. State*, 499 S.W.2d 662, 664 n. 2 (Tex.Crim.App.1973).

■ We conclude that neither art. 998 nor art. 999 gives city police general countywide authority to make warrantless arrests, and that the panel decision in *Lopez*, holding to the contrary, is in error. Articles 998 and 999 provide that city marshals, city police, and sheriffs have "like powers, rights, authority and jurisdiction." In this context, "jurisdiction" refers to what the officer may do, not where he may do it. *Buse*, 435 S.W.2d 530; *Minor*, 219 S.W.2d at 470 (Beauchamp, J., concurring); *Irwin*, 177 S.W.2d 970; *Weeks*, 106 S.W.2d 275; *Rozell*, 662 S.W.2d 634.

### D. *Newburn v. Durham—A Rejected Rule*

We are aware that the Texas Supreme Court, in answering a certified question, has held directly opposite to our conclusion, at least in felony arrests. *Newburn v.*

*Durham,* 88 Tex. 288, 31 S.W. 195 (1895). However, the Court of Criminal Appeals held the opposite of *Newburn* in *Weeks,* a misdemeanor, and ignored *Newburn* in *Irwin,* a felony, and in *Buse,* a misdemeanor. All three decisions reversed convictions, the opposite of the result indicated in *Newburn.*

Civil cases such as *Vernon v. City of Dallas,* 638 S.W.2d 5 (Tex.App.—Dallas 1982, writ ref'd n.r.e.) have also ignored *Newburn v. Durham* and reached the opposite result. In *Vernon,* a city of Dallas police officer sought worker's compensation benefits after being hurt outside the city of Dallas. The Court cited articles 998 and 999 as authority for limiting a city officer to his city. The Court wrote:

> We reject plaintiff's contention that arts. 6.05 and 6.06 [Code of Criminal Procedure] impliedly authorized and required him to act anywhere in the county. In our view, those provisions are expressly limited by art. 2.13 of the Code of Criminal Procedure, which states: '[I]t is the duty of every peace officer to preserve the peace *within his jurisdiction*' (court's emphasis). *Plaintiff is a 'peace officer'* by virtue of art. 2.12(3) of the Code of Criminal Procedure *and his 'jurisdiction' is the city. See* Tex.Rev. Civ.Stat.Ann. arts. 998, 999 (Vernon 1963–1981). We believe it would be an unreasonable construction of the statutes to hold, as plaintiff urges, that while a peace officer is expressly authorized to act only in his jurisdiction, he may by implication be authorized, if not required, to act over a much larger territory. *Surely where the legislature has been explicit with the limited grant of authority in art. 2.13, it would not leave this much broader grant to implication.*

638 S.W.2d at 8–9 (emphasis added).

The rejection of the rule in *Newburn* is shown in *Minor v. State.* In *Minor,* a felony, the majority opinion by three judges cited *Newburn,* but declined to apply it, relying instead on the narrow "hot pursuit" exception to affirm the conviction.

The other two judges expressly disapproved *Newburn's* construction of art. 999. *Minor* recognized the general rule that a city policeman cannot make a warrantless arrest outside his city. The *Minor* court would not have needed to rely on the then controversial "hot pursuit" exception if it had found broader authority in arts. 998, 999, or elsewhere, expanding a city police officer's territorial authority to the county line. Judge Hawkins, dissenting, denied that any such authority arose from art. 999, which he would have construed "to mean that *within the limits of the municipality the authority of the city officers was the same as that of the sheriff in his county.*" 219 S.W.2d at 471 (emphasis added). Judge Beauchamp, concurring, wrote that an officer in "hot pursuit" could arrest without warrant anywhere in Texas, but that, *"The statute [art. 999] giving the policeman a right similar to that of the sheriff must be limited to the confines of the city boundary lines. He cannot go beyond the city limits to initiate the arrest."* 219 S.W.2d at 471 (emphasis added). The three judges in the majority of the five-judge Court of Criminal Appeals concluded, "We hold that the city peace officer had the same power as the sheriff *relative to his jurisdiction....*". (emphasis added).

Plainly, the Court of Criminal Appeals has not followed the Supreme Court decision in *Newburn v. Durham.* Given several opportunities, that Court has declined to hold that arts. 998 and 999 give city officers the same county-wide warrantless arrest powers in felony offenses as sheriffs have. *Irwin; Minor;* both *supra.* The Court of Criminal Appeals has never cited *Newburn,* except in *Minor,* where it was not followed; the Supreme Court has never cited *Newburn;* no other court has cited *Newburn,* except the Court of Civil Appeals in the appeal of the same case, according to Shepard's Texas Citations.

E. *Comparison of Articles 998 and 999 With Statutes Giving Statewide Powers*

*Henson v. State,* 120 Tex.Cr.R. 176, 49 S.W.2d 463 (1932), decided the related issue

of whether a sheriff had authority to make warrantless arrests outside his county. In *Henson*, the Sheriff of Jones County received information that Henson would be coming into Jones County driving an automobile loaded with whiskey. The Sheriff drove into Haskell County to await Henson's approach. Henson was arrested in Haskell County and a search of his car turned up eight gallons of whiskey, for which he was convicted of transporting intoxicating liquor, a felony. The Jones County Sheriff's deputies arrested and searched Henson without a warrant. It was established that Henson did not consent to the search; that the officers could not see or detect any whiskey in his car until after the search; that the Jones County Sheriff and deputies held no commission as officers of Haskell County, where the arrest and search were made; and that the Jones County Sheriff and his deputies were the only peace officers present at the arrest and search.

The Court quoted provisions of the Code of Criminal Procedure then in effect which were identical in pertinent respects to arts. 2.17, 2.12, 2.13, and 15.06 of our present Code. These provided that, "Each sheriff shall be a conservator of the peace *in his county* ...", and, "It is the duty of every peace officer to preserve the peace *within his jurisdiction*. To effect this purpose he shall use all lawful means.... He shall give notice to some magistrate of all offenses committed *within his jurisdiction* ...." 49 S.W.2d at 464 (emphasis added).

The Court compared art. 6570 [now Tex. Rev.Civ.Stat.Ann. art. 4413(11) ] with Tex. Code Crim.P.Ann. art. 223 (now art. 15.06). Article 223 generally authorized Texas peace officers to *execute a warrant* in any county in Texas, whereas art. 6570 [now 4413(11)] authorized Texas Rangers to *make arrests* in any county in Texas.

The general statute governing peace officers, art. 223, then, as now, provided:

**2.** Art. 6570 is now codified, largely verbatim, as Tex.Rev.Civ.Stat.Ann. art. 4413(11), which grants statewide powers to Rangers in addition to, and subsequent to, granting them "all the

A warrant of arrest, issued by any county or district clerk, or by any magistrate (except county commissioners or commissioners' courts, mayors or recorders of an incorporated city or town), shall extend to any part of the state; and any peace officer to whom said warrant is directed, or into whose hands the same has been transferred, shall be authorized to execute the same in any county in this state.

*Quoted in Henson v. State*, 49 S.W.2d at 465; now codified as Tex.Code Crim.P.Ann. 15.06.

The broader statute, art. 6570, was the one describing the authority of Texas Rangers, which provided:

They shall have authority to make arrests, and to execute process in criminal cases, and in such cases shall be governed by the laws regulating and defining the powers and duties of sheriffs when in discharge of similar duties; except that they shall have the power and shall be authorized *to make arrests* and to execute all process in *criminal cases in any county in the state.*

*Quoted in Henson v. State*, 49 S.W.2d at 465.[2]

The Court then stated and underlined emphatically the following:

The opinion is expressed that the statutes quoted and those to which reference has been made evidence the intention of the Legislature to confine the jurisdiction of the sheriff to his county, except in so far as the authority to execute warrants of arrest in any county of the state is conferred by art. 223[15.06], C.C.P. The sheriff is a conservator of the peace *in his county*. It is his duty to preserve the peace *within his jurisdiction*. In performing this duty, he may, in meeting with resistance in the discharge of any duty imposed upon him by law, summon *citizens of his county* to overcome the resistance. The same statutes respect-

powers of peace officers." The same powers are granted to officers of the Texas Highway Patrol. *See* art. 4413(12).

ing the authority to make arrests and execute process in criminal cases govern sheriffs and state rangers, *except that state rangers have the power to make arrests in any county in the state.* Article 223[15.06], C.C.P., authorizing the execution of a warrant of arrest by a sheriff under the conditions stated in the article in any county in the state, is not deemed to have the effect to extend generally the jurisdiction of a sheriff beyond the borders of his county. In the absence of a warrant of arrest issued under the provisions of article 223, ... a sheriff as such is not authorized to make an arrest outside his county.

49 S.W.2d at 465 (emphasis in original).

*Henson* dealt with a sheriff's warrantless arrest outside his county, whereas the case at bar deals with a city officer's arrest outside his city, but within his county. Nevertheless, the Court of Criminal Appeals apparently viewed the difference as insignificant because 12 years later, in *Irwin, Henson* was cited as authority limiting a city officer's warrantless arrest and search powers to his city limits.

As the Court observed in *Henson*, when the legislature intended to give statewide warrantless arrest powers to Texas Rangers, it did so with great clarity, authorizing them "to make arrests and to execute all process in criminal cases in any county in the state." Presumably, the language authorizing Rangers "to make arrests" means warrantless arrests because arrests under warrant would be authorized by the language permitting them to "execute all process in criminal cases."

The language in the Texas Ranger statute, art. 4413(11), is much broader than language in art. 998. Article 998 provides:

*[City police] officers* shall have like powers, rights, authority and jurisdiction as are by said title vested in city marshals. Such police officers *may serve all process* issuing out of the corporation court *anywhere in the county* in which the city, town or village is situated. If the city, town or village is situated in more than one county, *such officers may serve*

*with process throughout those counties.* (emphasis added)

Article 998, unlike the Texas Ranger statute, does not give city officers "power to make arrests ... in criminal cases" throughout their county. It is a limited grant of power.

Neither does art. 999 expressly empower city marshals to arrest without warrant throughout the county in language as clear and specific as art. 4413(11) empowers Texas Rangers. Article 999 provides in pertinent part:

*For the purpose of executing all writs and process issued from the corporation court, the jurisdiction of the marshal extends to the boundaries of the county in which the corporation court is situated.* If the corporation court is in a city which is situated in more than one county, the jurisdiction of the marshal extends to all those counties. He shall have like power, with the sheriff of the county, to execute warrants; *he shall be active* in quelling riots, disorder and disturbance of the peace *within the city limits and shall take into custody all persons so offending against the peace of the city* and shall have authority to take suitable and sufficient bail for the appearance before the corporation court of any person charged with *an offense against the ordinance or laws of the city. It shall be his duty to arrest, without warrant, all violators of the public peace,* and all who obstruct or interfere with him in the execution of the duties of his office or who shall be guilty of any disorderly conduct or disturbance whatever; to prevent a breach of peace or preserve quiet and good order, he shall have authority to close any theatre, ballroom or other place or building of public resort. *In the prevention and suppression of crime and arrest of offenders, he shall have, possess and execute like power, authority, and jurisdiction as the sheriff.* (emphasis added)

The first sentence of art. 999 uses very clear language in giving the city marshal authority reaching "to the boundaries of

the county" for the sole purpose of executing corporation court process. However, the other parts of the statute, which specifically mention the marshal's territorial authority, limit it to the city's boundaries, except for serving warrants and process. For example, "he shall be active in quelling riots, disorder and disturbances of the peace *within the city limits*," and shall arrest all persons offending *"against the peace of the city."* He can take bail only "for the appearance *before the corporation court* of any person charged with *an offense against the ordinance or laws of the city."* The important sentence specifically authorizing "arrest without warrant" immediately follows the listing of other powers which are confined to the city limits, and it says nothing about where the city marshal's warrantless arrest power may be exercised.

The language in article 999, which either limits the city marshal to his city boundaries, or is silent about where he may operate, contrasts markedly with the first sentence extending the city marshal's power to serve process "to the boundaries of the county" or counties in which the city sits. The legislature used clear and specific language when it extended the city marshal's territorial powers to the county line, yet it did so only "for the purpose of executing all writs and process issued from the corporation court."

Article 999's limiting language also differs from the clear language the legislature used in article 4413(11) giving statewide warrantless arrest powers to Texas Rangers. It is significantly different from Tex.Code Crim.P.Ann. art. 1.23, which provides that all district and appellate court judges "shall, by virtue of their offices, be conservators of the peace *throughout the state."* (emphasis added). *See also* Tex. Const. art. 5, sec. 12. ("All judges of courts of this state, by nature of their office, [shall] be conservators of the peace throughout the state.") It differs from Tex.Rev.Civ.Stat.Ann. art. 6889 (Vernon 1960) which provides that, "Every constable may execute any process ... throughout his county and elsewhere...."

Indeed, art. 999 is completely silent about where the warrantless arrest power may be exercised.

In 1967, articles 998 and 999 were amended, and the amendments indicate what the legislature intended to be the geographic scope of a city police officer's authority. The following was added to article 998:

> Such police officers may serve all process issuing out of a corporation court anywhere in the county in which the city, town or village is situated. If the city, town or village is situated in more than one county, such officers may serve the process throughout those counties.

Similarly, the following was added to article 999:

> For the purpose of executing all writs and process issued from the corporation court, the jurisdiction of the marshal extends to the boundaries of the county in which the corporation court is situated.

■ In construing statutes, courts will not presume that the legislature has done a useless act. *Hunter v. Fort Worth Capital Corp.*, 620 S.W.2d 547, 551 (Tex.1981). If city police officers and the city marshal already had general countywide jurisdiction prior to the above-quoted 1967 amendments, the amendments added nothing to their existing authority and served no purpose whatsoever. If, however, they did not already have general countywide jurisdiction, the amendments certainly did not grant it to them. If the legislature had meant for city police and marshals to have general countywide authority, it would have clearly said so, as it has frequently done in other statutes, and it would not have given these officers countywide jurisdiction limited merely to executing process from the corporation courts.

The legislature's 1973 amendments to Tex.Rev.Civ.Stat.Ann. art. 999b, which added sec. 2a, shed further light on the legislature's intention. Ch. 587, sec. 1, 1973 (Tex. Gen.Laws 1626). This amendment permits neighboring counties or municipalities to enter agreements to cooperate "in the in-

vestigation of criminal activity and enforcement of the laws of this state." It further provides:

A law enforcement officer employed by a county or municipality covered by an agreement authorized by this section may make arrests outside the county *or municipality* in which he is employed, but within the area covered by the agreement, provided however, that the law enforcement agencies within such county or *municipality* shall be notified of such arrest without delay....

Peace officers employed by counties or municipalities entering into such agreements shall have *only* such additional investigative authority throughout the region as may be set forth in the agreement.

*Id.* (emphasis added). This language indicates the legislature's understanding that a city police officer's law enforcement activities are normally confined to his city. The statute gives city officers "only such additional investigative authority" outside their city as is provided in the inter-governmental agreement. If city police officers already had general county-wide authority, it would have been unnecessary to pass a statute authorizing local governments to grant it. There is no evidence in this case of any such agreement between the cities of Houston and Pasadena.

We conclude that the legislature, which has the power to grant countywide warrantless arrest powers to city police, *Hurley,* 234 S.W.2d at 1008, has not done so in arts. 998 and 999. We note that the legislature has met and adjourned many times without amending arts. 998 or 999 in pertinent respects, despite its presumed knowledge of decisions like *Weeks, Minor, Buse,* and *Irwin, supra,* which reversed convictions because of arrests by city officers outside their cities, and declined to follow the Supreme Court's decision in *Newburn v. Durham.*

### F. *Statewide Warrantless Arrest Powers for City Police*

We now decide whether Pasadena city officers have statewide warrantless arrest powers. It has been suggested that the Pasadena police had authority to arrest in Houston, as a result of Tex.Code Crim.P. Ann. art. 14.01(b) (Vernon 1977) which has created, according to some authorities, a statewide warrantless arrest power for all peace officers. Article 14.01(b) provides: "A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view."

In *Buse v. State,* the Court applied the common law rule and reversed a conviction, but stated in dicta that art. 14.01(b), which was not in effect at the time of the offense therein, gave all peace officers a statewide warrantless arrest power. 435 S.W.2d at 532. The same was stated in *Green v. State,* 490 S.W.2d 826 (Tex.Crim.App.1973), a driving while intoxicated case, although the statement was, again, unnecessary to the decision because the arresting officer, while *inside* his city limits, observed a traffic offense under either art. 6701d or former Penal Code art. 803. Violations of traffic laws within these two statutes are specific exceptions to the common-law rule, without regard to art. 14.01(b). *Christopher,* 639 S.W.2d at 937; *Hurley,* 234 S.W.2d at 1006.

The authority of the dicta in *Buse* and *Green,* regarding art. 14.01(b) is questionable in light of the recent Court of Criminal Appeals decision in *Christopher. Christopher* held that no statewide warrantless arrest power exists under art. 14.01(b) for game wardens, deputy constables, and municipal park patrolmen. In so doing, it impliedly recognized that the common-law rule has not been abrogated by art. 14.-01(b), at least for these three categories of peace officers. In affirming the conviction, the Court refused to rely on art. 14.01(b). Instead, it relied on art. 6701d, sec. 153, which provides:

Any peace officer is authorized to arrest without a warrant any person found committing a violation of this article.

The Court held that this language, unlike art. 14.01(b), created a statewide warrantless arrest power for all peace officers,

limited solely to motor vehicle offenses covered by art. 6701d. Four judges dissented even from that limited holding, arguing that art. 6701d, sec. 153, did not grant statewide warrantless arrest power to all peace officers. 639 S.W.2d at 937–41.

■ *Christopher* appears to have silently overruled the obiter dicta in *Green* and *Buse, supra,* by holding that no general statewide warrantless power exists under art. 14.01(b) for deputy constables and municipal park patrolmen. 639 S.W.2d at 937. We observe that the same statute declaring deputy constables and municipal park patrolmen to be peace officers declares city police to be peace officers. *See* Tex.Code Crim.P.Ann. art. 2.12(2), (3). We perceive no difference in the authority granted to city police, deputy constables, and municipal park patrolmen under art. 14.01(b).

We further note that art. 14.01(b) says nothing about *where* the arrest power may be exercised. This is in contrast to Tex. Rev.Civ.Stat.Ann. arts. 998, 999, 4413(11), 6889; Tex.Code Crim.P.Ann. arts. 1.23, 2.13, 2.17, 15.06; and Tex. Const. art. 5, sec. 12, which establish both general and specific territorial limitations.

■ In deciding whether art. 14.01(b) gives statewide powers, we construe it strictly because it is in derogation of both the common law rule and the Texas Constitution. *Honeycutt,* 499 S.W.2d 662; *Irwin,* 177 S.W.2d 970.

> Our courts, both civil and criminal, have consistently said that the arrest of a citizen without warrant is an unreasonable seizure of his person, unless it is expressly authorized by statute.... If the situation claimed to authorize an arrest without warrant does not come squarely within some [statutory exception], the authority does not exist, because the statutes are strictly construed.

*Heath v. Boyd,* 175 S.W.2d at 215. We conclude that art. 14.01(b) does not expand the warrantless arrest power of a city police officer beyond city limits.[3] *Christopher v. State,* 639 S.W.2d at 937.

■ Our holding that city police officers may not arrest outside their cities without warrant, unless in hot pursuit or with specific statutory authority, is based on Texas constitutional law, Texas statutory law, and Texas common law, not on federal constitutional law. These authorities limit warrantless arrests more strictly than does the United States Constitution. *See Milton v. State,* 549 S.W.2d 190, 192 (Tex.Crim. App.1977). This is a "plain statement" within the meaning of *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201 (1983).

It may be argued that there is always a serious shortage of peace officers and that the shortage can be partially alleviated by abolishing territorial limitations on their power and by granting them countywide or statewide warrantless arrest authority. On the other hand, it may be argued that the common-law rule is needed in order to preserve local civilian control of peace officers, who should not be allowed to operate in cities or counties whose elected leaders have no control over their selection, training, discipline, supervision, and performance. These are difficult issues which are, and should be, controversial, but they are for the legislature to decide, not us. The legislature may, by simple majority vote, grant broad statewide warrantless arrest powers to all peace officers, thus abrogating both the common-law rule keeping city police in their cities and the limitations of Chapter 14 on warrantless arrests. *Hurley,* 234 S.W.2d at 1008. So far, however, it has not done so.

The first ground of error is sustained.

The judgment of the trial court is reversed and the cause is remanded for a new trial.

---

**3.** Guidance on this subject, from either the Court of Criminal Appeals or the legislature, would enable courts and peace officers to better understand the geographic limits of every Texas peace officer to preserve the peace "*within his jurisdiction.*" Although Presiding Judge Hawkins of the Court of Criminal Appeals sought such guidance from the legislature in 1949, the need persists. *Minor v. State,* 219 S.W.2d at 471 (Hawkins, P.J., dissenting).