David Lee CHRISTOPHER, Appellant,

v.

The STATE of Texas, Appellee.

No. 61679.

Court of Criminal Appeals of Texas,
Panel No. 3.

June 23, 1982.
On Rehearing Oct. 20, 1982.

Charles O. Grigson, Austin, for appellant.

Ronald Earle, Dist. Atty., Bill White, Asst. Dist. Atty., Robert Huttash, State's Atty., Austin, for the State.

Before DALLY, W.C. DAVIS and TEAGUE, JJ.

OPINION

W.C. DAVIS, Judge.

This is an appeal from a conviction for possession of marihuana in an amount over four ounces. Trial was before the court which found the appellant guilty. Punishment was assessed by trial court at three years probated and a $5,000 fine.

The record reveals that on March 19, 1978 at approximately 3:00 a.m., Charles Talbert, a game warden, observed the appellant driving a pickup truck with a camper and another vehicle driving through Dripping Springs, Texas. Officer Talbert became suspicious of the vehicles and followed them. While following the appellant, Talbert determined that the appellant was exceeding the speed limit. Talbert continued to follow appellant in order to determine whether the appellant was speeding deliberately.

Officer Talbert contacted Jim Kitchens of the Travis County Sheriff's Department by radio to request Kitchens' help in stopping the two vehicles in question. Talbert informed Deputy Kitchens that the vehicles were exceeding the speed limit. Deputy Kitchens caught up with Talbert as he was following the vehicles in question. Deputy Kitchens stopped the automobile, while Talbert stopped the pickup truck, driven by the appellant. Officer Talbert testified that although he was suspicious of the two vehicles, he only stopped the appellant after he determined that the appellant was speeding deliberately.

Deputy Kitchens and Officer Talbert both testified that as they approached the pickup truck they detected a strong odor of marihuana. Kitchens and Talbert testified that they detected the odor eight feet from the pickup truck. Officer Talbert and Deputy Kitchens detained the appellant and requested the assistance of Department of Public Safety Narcotics Agents.

DPS Agent Kenneth Dismukes testified that when he arrived, he also detected a strong odor of marihuana emanating from the camper shell of the pickup truck. Dismukes asked the appellant for a key to the camper; however, the appellant replied that he had no key. Officers subsequently found a key to the camper on the appellant's key ring. Upon opening the camper,

the officers found a large quantity of marihuana.

◼ In ground of error one the appellant contends that his initial detention was illegal because a game warden has no legal authority to stop or arrest the appellant for exceeding the speed limit. Appellant argues that a game warden's authority to arrest is limited specifically to violations of the laws relating to game, birds, fish and other marine life, see Sec. 12.102, Tex. Parks and Wildlife Code Ann. (Vernon's 1976), or violations of the law occurring on a state park or historical site, see Sec. 11.019, supra.

The State contends that because Art. 2.12(11), Vernon's Ann.C.C.P., provides that law enforcement officers commissioned by the Parks and Wildlife Commission are peace officers, the provisions of the Code of Criminal Procedure delineating the arrest authority of *peace officers* apply equally to game wardens. See Art. 2.13 and 14.01(b), Vernon's Ann.C.C.P. Appellant conversely maintains that an irreconcilable conflict exists between the provisions of the Parks and Wildlife Code, defining the authority of game wardens, and the provisions of the Code of Criminal Procedure, prescribing the arrest authority of peace officers. The appellant further argues that the Code of Criminal Procedure is a general law, whereas the Parks and Wildlife Code is specific, as it applies to game wardens. Therefore, the Parks and Wildlife Code should supercede the application of the Code of Criminal Procedure. Article 5429b–2, Sec. 3.06, Vernon's Ann.Civ.St. (Code Construction Act).

The purpose of the Parks and Wildlife Code, as set forth in Sec. 1.001 of that code, is to make general parks and wildlife law more accessible and understandable. See Tex. Parks and Wildlife Code Ann., Sec. 1.001, (Vernon's 1976). Further, section 1.002 states that the Code Construction Act, see Art. 5429b–2, supra, applies to the construction of each provision in the Texas Parks and Wildlife Code.

Sec. 12.102, supra, provides in pertinent part:

"(b) An authorized employee of the department may arrest without a warrant any person found in the act of violating any law relating to game, birds, or fish."

Sec. 11.019, supra, provides in pertinent part:

"(b) Employees commissioned under this section have the powers, privileges, and immunities of peace officers while on state parks or on state historical sites or in fresh pursuit of those violating the law in a state park or historical site."

Article 2.12(11), Vernon's Ann.C.C.P., provides that law enforcement officers commissioned by the Parks and Wildlife Commission are peace officers. Id. Further, Article 2.13, supra, provides that peace officers "shall arrest offenders without warrant in every case where he is authorized by law." Id. Finally, Article 14.01(b), Vernon's Ann.C.C.P. authorizes a peace officer to arrest without a warrant a person committing any offense in his presence; and Article 6701d, Sec. 153, Vernon's Ann. Civ.St. authorizes any peace officer to stop *any* person who is violating a traffic law.

We now turn our attention to Section 3.06 of the Code Construction Act, supra, for guidance in harmonizing the preceding statutes. Section 3.06 provides that "if a general provision conflicts with a special or local provision, they shall be construed if possible, so that effect is given to both." Considering the preceding sections of the Parks and Wildlife Code and the Code of Criminal Procedure we conclude that such provisions can be construed so that effect is given to the provisions of both codes. Although the Parks and Wildlife Code defines the duties of game wardens regarding wildlife laws, the cited sections do not specifically limit the game wardens authority only to the defined situations. The game wardens, therefore, retain the general arrest authority prescribed in Article 2.12(11); 2.13;

14.01(b) of Vernon's Ann.C.C.P. This ground of error is overruled.

■ The appellant, in ground of error two, contends the initial warrantless stop was made without probable cause.

Although Officer Talbert admitted that he was suspicious of the appellant, Talbert stopped the appellant only after observing him speeding, requesting assistance from a Travis County deputy and following the appellant for a distance to determine that the appellant was speeding deliberately. The initial stop of appellant's vehicle was authorized because a traffic violation was committed within the presence or view of Talbert. See *Drago v. State,* 553 S.W.2d 375 (Tex.Cr.App.1977); *Dillard v. State,* 550 S.W.2d 45 (Tex.Cr.App.1977). Talbert was thus acting within his authority as a Texas peace officer. See Article 6701d, Sec. 153, Vernon's Ann.Civ.St.; Article 14.01(b), Vernon's Ann.C.C.P. This ground of error is overruled.

In appellant's third ground of error, he contends that the trial court erred in denying his motion to suppress the marihuana seized because the officers failed to obtain a warrant to search the vehicle.

■ A peace officer, after a bona fide stop for a traffic offense as in the instant case, may then make an additional arrest for any other offense discovered during the investigation. See *Taylor v. State,* 421 S.W.2d 403 (Tex.Cr.App.1967). Further, the officer may conduct a search incident to such arrest. See *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Finally, when a peace officer possesses probable cause that a motor vehicle contains contraband or the instrumentalities of a crime, a valid search can be conducted in the area of the vehicle where the facts justify the officer's belief that such evidence is there concealed. See *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *Gill v. State,* Tex.Cr.App., 625

S.W.2d 307 (1981); *Borner v. State,* 521 S.W.2d 852 (Tex.Cr.App.1975).

■ In the instant case exigent circumstances and probable cause existed requiring the officers to proceed to arrest the appellant and search the camper of the truck for marihuana without waiting for a warrant. See *Borner v. State,* supra; *Attwood v. State,* 509 S.W.2d 342 (Tex.Cr.App. 1974). This ground of error is overruled.

In ground of error four appellant maintains the evidence was insufficient to show that he knew the substance he was transporting was marihuana. The appellant argues that, as in *Reyes v. State,* 575 S.W.2d 38 (Tex.Cr.App.1979), the evidence failed to establish that the pickup truck was registered in his name and there was no evidence to connect the appellant to the registered owner. Appellant, therefore, contends the evidence was insufficient to support his conviction.

■ To support a conviction for possession of marihuana the evidence must affirmatively link the accused to the contraband in such a manner and to such an extent that a reasonable inference may arise that the accused knew of the contraband's existence and of its whereabouts. See *Sewell v. State,* 578 S.W.2d 131 (Tex.Cr. App.1979); *Harrison v. State,* 555 S.W.2d 736 (Tex.Cr.App.1977). This affirmative link is established by showing additional facts and circumstances which indicate the accused's knowledge and control of the contraband. See *Harrison v. State,* supra; *Long v. State,* 532 S.W.2d 591 (Tex.Cr.App. 1976).

■ In the instant case, the appellant was in possession of the key to the camper which reasonably implies his control over the contraband. Further, the evidence established that the odor of marihuana was detectable as far as eight feet from the camper. The presence of such a strong odor also suggests that the appellant would become aware of the existence of the mari-

huana before entering the cab of the pickup truck. Cf. *Duff v. State,* 546 S.W.2d 283 (Tex.Cr.App.1977). We find the evidence was sufficient to establish the accused's knowledge and control of the contraband. This ground of error is overruled.

The judgment is affirmed.

TEAGUE, J., dissents.

## OPINION ON APPELLANT'S MOTION FOR REHEARING

ODOM, Judge.

This is an appeal from a conviction for possession of marihuana in an amount over four ounces. The appellant was found guilty by the trial court and punishment was assessed at three years, probated, and a $5000 fine. The judgment was affirmed. We granted leave to file the appellant's motion for rehearing to consider appellant's ground of error, that a game warden has no authority to arrest the appellant for speeding under the facts of this case.

Art. 2.12(11), V.A.C.C.P., provides:

"The following are peace officers:

" . . .

"(11) law enforcement officers commissioned by the Parks and Wildlife Commission."

The Code of Criminal Procedure provides for general powers of peace officers. Art. 2.13, V.A.C.C.P. under Duties and Powers states:

"It is the duty of every peace officer to preserve the peace within his jurisdiction. To effect this purpose, he shall use all lawful means. He shall in every case where he is authorized by the provisions of this Code, interfere without warrant to prevent or suppress crime. He shall execute all lawful process issued to him by any magistrate or court. He shall give notice to some magistrate of all offenses committed within his jurisdiction, where he has good reason to believe there has been a violation of the penal law. He shall arrest offenders without warrant *in every case where he is authorized by law,*

in order that they may be taken before the proper magistrate or court and be tried." (Emphasis added.)

In addition Art. 14.01(b), V.A.C.C.P., upon which the panel opinion relied, provides:

"(b) A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view."

The record reflects that officer Talbert, a game warden for the Texas Parks and Wildlife Department, initially stopped the appellant for speeding.

Article 6701d, Sec. 153, Vernon's Ann. Civ.St. states:

"*Any* peace officer is authorized to arrest without warrant any person found committing a violation of any provision of this Act. [Traffic Regulations.]" (Emphasis added.)

The *specific* authority and jurisdiction of game wardens as peace officers is set out in Secs. 11.019(b) and 12.102(a) and (b) Parks & Wildlife Code Annotated:

Section 11.019(b) states:

"Employees commissioned under this section have the powers, privileges, and immunities of peace officers while on state parks or on state historical sites or in fresh pursuit of those violating the law in a state park or historical site."

Further, Sec. 12.102(a) and (b) provides:

"An authorized employee of the department has the same authority as a sheriff to arrest, serve criminal process, and require aid in serving criminal process in connection with violations of the law relating to game, fish, and birds. The department may receive the same fees as are provided by law for sheriffs in misdemeanor cases.

"(b) An authorized employee of the department may arrest without a warrant any person found in the act of violating any law relating to game, birds, or fish."

Appellant contends in his ground of error that the *specific* authority and jurisdiction

of Sections 11.019 and 12.102, supra, controls over the general provisions given to peace officers, (i.e. game wardens), under the Code of Criminal Procedure. Appellant implies that these codes are in conflict and are not compatible if both are given effect. Therefore, the specific powers, 11.019 and 12.102, under the Parks and Wildlife Code, should be given effect.

Article 5429b–2, Sec. 3.06, V.A.C.S., provides:

"If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision unless the general provision is the later enactment and the manifest intent is that the general provision prevail." [1]

Section 11.019 and Sec. 12.102, supra, can either be read as a limitation placed on a game warden's general power as a peace officer, 14.01, supra, thereby restricting his authority and jurisdiction to parks and historical sites or Secs. 11.019 and 12.102, supra, may be read separately as an explanation of their specific power. The statutes are reconcilable and may be construed as to give effect to both.

We do not agree with the panel opinion that Art. 14.01(b), supra, creates a *general* power for *any* peace officer to·arrest without warrant under the stated conditions. That article is part of chapter 14, which delineates the circumstances under which no warrant is required for an arrest. It does not purport to delineate who is a peace officer. That function is accomplished by Arts. 2.12 and 2.13, supra. Art. 2.13 commences, "It is the duty of every peace officer to preserve the peace *within his jurisdiction. To effect this purpose,* he

shall use all lawful means." (Emphasis added.) Art. 2.13 then *elaborates* upon means of accomplishing the previously stated *purpose* by listing a series of specific duties and powers (arrest without warrant, execution of process, etc.). To hold that Art. 14.01(b) authorizes *any* peace officer to arrest for *any* offense would effectively render meaningless all specific grants of authority, such as the Parks and Wildlife Code provisions quoted above.[2] It would also give deputy constables and municipal park patrolmen (Art. 2.12(2) and (13), supra), state-wide jurisdiction. We do not believe the legislature intended such a result.

On the other hand, we likewise do not agree with appellant's argument that the specific grant of power in the Parks and Wildlife Code set out above constitutes a restriction or exclusive expression of the powers of game wardens. Not addressed by appellant is the other grant of authority relied on in the panel opinion, namely, Art. 6701d, Sec. 153, V.A.C.S.:

"*Any* peace officer is authorized to arrest without warrant any person found committing a violation of any provision of [traffic regulations] Act." (Emphasis added.)

Unlike Art. 14.01(b), supra, this provision does *expressly* grant arrest powers to *any* peace officer. We hold this provision includes a grant of authority to game wardens and that appellant's arrest for speeding was lawful.

The motion for rehearing is denied.

McCORMICK, J., concurs in the result.

### ON APPELLANT'S MOTION FOR REHEARING

CLINTON, Judge, dissenting.

The majority holds that § 153 of Article 6701d, V.A.C.S., grants game wardens au-

---

1. Art. 14.01(b), supra, was effective Aug. 28, 1967, and Secs. 11.019 and 12.102 were effective Sept. 1, 1975. Art. 2.12 was amended and effective May 24, 1977. This is an affirmative act by the legislature showing that Art. 2.12, § (11), was intended to include game wardens as peace officers under the laws of the State of Texas.

2. Art. 14.01(a), on the other hand, authorizes *any person* to arrest under certain circumstances. Of course this would include persons who happen to be game wardens, but not due to their status as game wardens.

thority to arrest a citizen for speeding. But its formulation is such that every person within any classification listed in Article 2.12, V.A.C.C.P., will be empowered, by this decision, to stop and arrest anyone "found committing a violation of any provision" of the Uniform Act Regulating Traffic on Highways, Article 6701d, V.A.C.S.[1] Yet there cannot be found a legislative intent to enlist in the battle against traffic violators every single "peace officer" in the State of Texas.

In 1917 when the Legislature enacted the law of the road, Article 801, P.C. 1925, and other provisions to regulate driving motor vehicles on public highways, it included the following:

"Any peace officer within this State shall be authorized to arrest without warrant any person found committing a violation of any of the penal provisions of this Act *within his view or in his presence.*"[2]

At that time the predecessor to Article 2.12, supra, identified as peace officers:

"The sheriff and his deputies, constable, the marshal, constable or policeman of an incorporated town or city, and any pri-

vate person specially appointed to execute criminal process."[3]

Article 43, C.C.P. 1911.[4]

However, then as now, notwithstanding the duties and powers generally stated in terms similar to Article 2.13, V.A.C.C.P., each category of peace officer drew power and authority from a specific statutory grant. The sheriff and his deputies from, *inter alia,* Articles 2.17[5] and 2.20,[6] V.A.C.C.P., respectively; constables as provided in Article 6885, V.A.C.S.;[7] marshals in Article 999,[8] V.A.C.S., and police officers with powers of marshals by Article 998, V.A.C.S.

Thereafter when a legislative act bestowed particular power and authority pertaining to some aspect of law enforcement, likely as not the recipient category was added to Article 2.12. Thus, after the Texas Ranger Force was reorganized and its members again clothed with like powers of sheriffs by Acts 1919, p. 263, its members were included in old Article 36, C.C.P. 1925. Like treatment was accorded other classifications once their prescribed power and authority had been legislatively provided. So it was that the "jurisdiction" of specially created "peace officers" was prescribed and

---

1. The ranks mustered by the majority would include, *inter alia:*
   investigators for prosecutors;
   Alcoholic Beverage Commission agents;
   arson investigators;
   any private person appointed to execute criminal process;
   campus security personnel of higher education institutions;
   Board of Control officers;
   airport security personnel;
   municipal park and recreational patrolmen and security officers;
   security officers of the State Treasurer.

2. Acts 1917, 1st C.S. 35th Leg., p. 48, ch. 31, § 1, codified as Article 803, P.C. 1925. (All emphasis is mine throughout unless otherwise indicated.)

3. Since the Old Code, under prescribed circumstances "a suitable person" may be specially appointed to execute such process as a warrant of arrest. See Article 15.14, V.A.C.C.P. But his authority terminates once the purpose of the appointment has been accomplished. *O'Neal v. State,* 32 Tex.Cr.R. 42, 22 S.W. 25 (1893).

4. Not specifically included were members of the Texas Ranger Force, but by an earlier act they had been expressly clothed with arrest powers of sheriffs. Acts. 1901, p. 41, § 11; Article 47a, C.C.P. 1916.

5. "Each sheriff shall be conservator of the peace in his county, and shall arrest all offenders against the laws of the State, in his view or hearing..."

6. "Wherever a duty is imposed by this Code upon the sheriff, the same duty may be lawfully performed by his deputy."

7. "Each constable shall execute and return according to law all process, warrants and precepts to him directed..."

8. "[H]e shall be active in quelling riots, disorder and disturbance of the peace within the city limits and shall take into custody all persons so offending against the peace of the city... It shall be his duty to arrest, without warrant, all violators of the public peace..."

their powers bestowed by particular law.[9] It is for that reason that not every peace officer possesses in common with all other peace officers the same powers, duties and responsibilities. See *Bennett v. State,* 136 Tex.Cr.R. 192, 124 S.W.2d 359 (1939). Accordingly, Articles 2.12, 2.13 and other related prescriptions of the code of criminal procedure must be considered in light of the particular legislative act specially designed for a particular category of persons charged with enforcing a certain statute or otherwise limited in law enforcement activity.[10] Compare *King v. State,* 132 Tex.Cr.R. 200,

---

9. The State Highway Patrol was created in 1931, see Article 827a, § 16, V.A.C.S. (remainder transferred to Article 6701d–11, V.A.C.S.), and was initially "charged primarily with the duty of enforcing all the State Laws relating to vehicles and traffic on the public highways," but also "vested with all the rights and powers of peace officers, to pursue and arrest any person for any offense when said person is found on the highway," *id.,* § 16. See now Article 4413(12), V.A.C.S.

The State Liquor Control Board was created in 1935 and it and its administrator were empowered "to commission such number of inspectors and representatives which it deems necessary to enforce the provisions of [the Texas Liquor Control] Act." Articles 666–5, 6 and 7b, P.C. 1925, as amended. See now V.T.C.A. Alcoholic Beverage Code, § 5.14.

When the revised code of criminal procedure was enacted in 1965, Article 2.12 included, along with categories previously listed, officers of the Department of Public Safety and law enforcement agents of the Texas Liquor Control Board.

Though investigators of district and county attorneys had been granted "the same authority as the sheriff of the county to make arrests anywhere in the county . . ." in 1935, Article 326k–6, V.A.C.S., they were not added until a 1967 amendment. So were each member of an arson investigating unit of a city, county or state. See V.T.C.A. Insurance Code, Article 5.44 for duties of State Fire Marshal.

Campus security personnel may be employed by a governing board of each state institution of higher education "for the purpose of carrying out the provisions of this subchapter [E]"— protection of buildings and grounds—and if commissioned as a peace officer one possesses all powers of a peace officer "while on the property under the control and jurisdiction of the institution of higher education or otherwise in the performance of his duties," V.T.C.A. Education Code, § 51.203. Similarly, the former Board of Control was authorized by old Article 678e, § 7, V.A.C.S. to employ watchmen "for the purpose of carrying out the provisions of this Act"—protection and policing of state buildings and grounds—"and to commission them as peace officers;" as such they were vested with powers of peace officers "while on the areas regulated by this Act or in fresh pursuit of those violating the law in such areas." Under successor State Purchasing and General Services Commission watchmen are now "security officers." See Article 601b, § 4.12(g).

Campus security personnel, Board of Control watchmen and, as shall be developed shortly in the text, game management officers commissioned by the Parks and Wildlife Commission were added to Article 2.12 by Acts 1971, 62nd Leg., p. 1116, ch. 246, § 3.

In 1973 the Legislature authorized every governing body of any political subdivision operating a prescribed kind of airport to "establish an airport security force and employ airport security personnel," any of which the governing body may commission as a peace officer; as amended in 1975, any such commissioned peace officer was vested with rights and duties of any other peace officer "while he is on the property under the control of the airport or in the actual course and scope of his employment," Article 46g, V.A.C.S.

City parks and recreational facilities are authorized and governed by *inter alia* Chapter 6 of Title 103, V.A.C.S.; see Article 6080 *et seq.* Every home rule city is, of course, authorized to provide for police and fire departments, Article 1175, § 27, and specially granted power "to police all parks or grounds . . .," *id.,* § 19. In 1975 municipal park and recreational patrolmen and security officers generally were added to Article 2.12, the preceding session having purported to include them when employed by certain cities, see Acts 1973, 63rd Leg., p. 480, ch. 204, § 1.

Security officers of the State Treasurer were added in 1977, when he was directed to employ them "to provide needed security services at the Treasury Department" and allowed to commission them as peace officers. Article 4375, V.A.C.S., as amended.

10. For one example, at common law a sheriff has no jurisdiction beyond the boundaries of his county, and the Court has held that notwithstanding his being designated a peace officer and thereby impliedly included with the broad provisions of Article 2.13, in the absence of an arrest warrant pursuant to Article 15.06, V.A.C.C.P., "a sheriff as such is not authorized to make an arrest outside his county," *Henson v. State,* 120 Tex.Cr.R. 176, 49 S.W.2d 463, 465 (1932). With respect to city police officers, for another, the Court first found that "Article 999 . . . seems to limit the legal authority of peace officers to their own bailiwick," *Weeks v. State,* 132 Tex.Cr.R. 524, 106 S.W.2d 275, 276

103 S.W.2d 754 (1937) with *Bennett v. State,* supra.

The office of Game, Fish and Oyster Commissioner was created by Acts 1907, 30th Leg., ch. 137, p. 254, and § 3 of that Act granted him power to enforce the game law. Among others he was granted power to arrest without a warrant "any person found by him in the act of violating any of the laws for the protection and propagation of game or wild birds..." Thereafter, whatever the officer or agency charged specifically with enforcing our game laws, the substance of power to arrest without a warrant remained essentially the same. See P.C. 1911, Article 897 and P.C. 1925, Article 905;[11] Article 978f–3, § 6, P.C. 1925, as amended. *Smith v. State,* 169 Tex.Cr.R. 58, 331 S.W.2d 321 (1960): "[D]eputy game and fish wardens are authorized to arrest persons either with or without a warrant in enforcement of the game laws of this State." V.T.C.A. Parks and Wildlife Code, § 12.102 is derived from those provisions of law.

Contemporaneously our state parks were watched over by a keeper "who shall be clothed with all the powers and authority of a peace officer of the county, for the purposes of caring for and protecting the property within said parks." Article 6069, V.A.C.S. Then the State Parks Board was abolished, and its powers, duties and responsibilities were transferred to the Parks and Wildlife Department—the reconstituted game and fish commission. Acts 1963, 58th Leg., p. 945, ch. 373, § 1. In 1969 the Legislature authorized the Parks and Wildlife executive director to commission as peace officers any employee provided for in the general appropriations act, Article 978–5c, P.C. 1925, as amended, the stated reason being that "there now is no provision for full and adequate enforcement of all laws

in state parks and state historical sites," Acts 1969, 61st Leg., p. 1988, ch. 677, § 3. Such is the source of § 11.019, V.T.C.A. Parks and Wildlife Code.

At some point in time there seems to have been a classification of employee of the Parks and Wildlife Commission called game management officer: in 1971 the Legislature added that category to Article 2.12, along with campus security personnel and board of control officers. Acts 1971, 62nd Leg., p. 1116, ch. 246, § 3. The next session continued to call them game management officers when the Legislature added airport security personnel, Acts 1973, 63rd Leg., p. 9, ch. 7, § 2. Then, in 1975 they became "law enforcement officers" instead of game management officers, as the Legislature added municipal park and recreational patrolmen and security officers, without regard to population. Acts 1975, 64th Leg., p. 480, ch. 204, § 1. However, the term still appears in § 31.121 of V.T.C.A. Parks and Wildlife Code, in connection with enforcing provisions of the Water Safety Act.

So it came about that law enforcement officers commissioned by the Parks and Wildlife Commission are said by Article 2.12, supra, to be "peace officers". However, their actual authority necessarily flows from a legislative grant that is conditioned upon one's status as "an authorized employee of the department." Such an employee is commissioned to "arrest without warrant any person found in the act of violating any law relating to game, birds, or fish." V.T.C.A. Parks and Wildlife Code, § 12.102(a) and (b).

Accordingly, a law enforcement officer commissioned by the Parks and Wildlife Commission is without power to make a warrantless arrest for a violation of the

---

(1937), but a majority later retreated from such a strict proscription when the police officer pursues outside his city one who has committed an offense in his presence while within the city. *Minor v. State,* 153 Tex.Cr.R. 242, 219 S.W.2d 467, 470, 472 (1949).

11. When the commissioner was allowed to employ deputies they too made do with authority

to make a warrantless arrest of "any person found by them in the act of violating any of the laws for the protection and propagation of game, wild birds or fish..." Civilly, Article 4018, V.A.C.S. authorized the commissioner and his deputies to "arrest without warrant anyone found violating any of the fish, game or oyster laws of Texas..."

Uniform Act Regulating Traffic on Highways unless the violation is shown to be somehow related to an offense denounced by a provision of the Parks and Wildlife Code, and I would so hold. Since the majority does not, I respectfully dissent.

ONION, P.J., and ROBERTS and TEAGUE, JJ., join.