11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Luis Zeijas 

Appellant

Vs.                   No.
11-02-00065-CR B Appeal from Nolan County 

State of Texas              

Appellee

 

The jury
convicted appellant of the second degree felony offense of possession of
marihuana, less than 2,000 pounds but more than 50 pounds, and assessed his
punishment at 10 years confinement.  We
affirm.

                                                                  Issues
Presented

In his
first issue, appellant argues that the trial court erred in denying his motion
to suppress.  Specifically, appellant
argues that he did not freely and voluntarily consent to the search of the
vehicle that led to the discovery of the marihuana and that, therefore, the
search was illegal.  In his second
issue, appellant asserts that the evidence was legally and factually
insufficient to support his conviction for possession of marihuana.

                                                      Appellant=s Motion to Suppress           

We review
a trial court=s ruling on a motion to suppress under an
abuse of discretion standard.  Oles
v. State, 993 S.W.2d 103, 106 (Tex.Cr.App.1999).  The trial court is the finder of fact at a motion to suppress
hearing and may choose to believe or disbelieve any or all of the witnesses= testimony. 
Johnson v. State, 803 S.W.2d 272, 287 (Tex.Cr.App.1990), cert.
den=d, 501 U.S. 1259 (1991). 
Appellate courts must afford almost total deference to the trial court=s findings of historical facts that are based
on an evaluation of credibility and demeanor. 
Guzman v. State, 955 S.W.2d 85, 89 (Tex.Cr.App.1997).  Appellate courts should afford the same
deference to the trial court=s rulings on questions of law when the resolution of those questions
turns on an evaluation of credibility and demeanor.  Guzman v. State, supra.








Generally,
the police must obtain a warrant based upon probable cause before they may
search a person=s private property.  U.S. CONST. amends. IV and XIV; TEX. CONST. art. I, ' 9. 
One of the established exceptions to the general rule is that the police
may search without a warrant if they first obtain voluntary consent.  Guevara v. State, 97 S.W.3d 579, 582
(Tex.Cr.App. 2003)(citing Schneckloth v. Bustamonte, 412 U.S. 218
(1973)(quoting Katz v. United States, 389 U.S. 347, 357 (1967))).  The voluntariness of the consent Ais a question of fact to be determined from
all the circumstances.@  Ohio v. Robinette, 519 U.S. 33, 40
(1996); Schneckloth v. Bustamonte, supra at 248-49; Guevara v.
State, supra at 582.  For
federal constitutional purposes, the State need only prove voluntariness by a
preponderance of the evidence.  Maxwell
v. State, 73 S.W.3d 278, 281 (Tex.Cr.App.2002).  Under the Texas Constitution, however, the State must prove
voluntariness by clear and convincing evidence.  Maxwell v. State, supra. 

 The question is whether, under the totality
of the circumstances, the consent was voluntary or the product of express or
implied coercion.  Schneckloth v.
Bustamonte, supra at 225-29; Johnson v. State, supra at 286.  Consent is voluntary unless the accused=s will was Aoverborne@ by
police tactics.  See Schneckloth v.
Bustamonte, supra at 225-27. 
Courts consider various factors in determining the voluntariness issue,
including the youth of the accused, the education of the accused, the
intelligence of the accused, the constitutional advice given to the accused,
the length of the detention, the repetitiveness of the questioning, and the use
of physical punishment.  Reasor v. State,
12 S.W.3d 813, 818 (Tex.Cr.App.2000). 
Testimony by the police that no coercion was involved in obtaining the
consent is evidence of the consent=s voluntary nature.  Martinez
v. State, 17 S.W.3d 677, 683 (Tex.Cr.App.2000)(citing Allridge v. State,
850 S.W.2d 471, 492 (Tex.Cr.App.1991), cert. den=d, 510 U.S. 831 (1993)).  A
police officer=s failure to inform the accused that he can
refuse to consent is a factor to consider in determining the voluntariness of
consent but does not automatically render the accused=s consent involuntary.  Johnson v. State, 68 S.W.3d 644, 653
(Tex.Cr.App.2002)(citing Ohio v. Robinette, supra at 39-40, and Meeks
v. State, 692 S.W.2d 504, 510 (Tex.Cr.App.1985).  When the record supports a finding that consent was freely and
voluntarily given, the appellate court may not disturb that finding.  Johnson v. State, supra at
287.    








Department
of Public Safety Trooper E. J. Nunez testified at the hearing on appellant=s motion to suppress.  Trooper Nunez said that he stopped appellant
on Interstate 20 for the purpose of performing a commercial motor vehicle
inspection on the tractor trailer that appellant was driving.  Trooper Nunez testified that appellant did
not have a valid driver=s license; that appellant=s log book was not current; that appellant could not recall what type
of load that he was carrying in the trailer; and that appellant told him that
he was going to Weatherford, Texas, and then to San Antonio, Texas.  Trooper Nunez requested the bill of lading
for the load, and appellant provided it to him.  The bill of lading identified the load as watermelon and mixed
produce and indicated that the load was going to be delivered to a business in
Chicago, Illinois.  The bill of lading
listed another person as the driver rather than appellant.   

Trooper
Nunez talked with appellant about the inconsistencies between the bill of
lading and appellant=s
story.  Appellant told Trooper Nunez
that he did not know why the bill of lading said that the load was going to be
delivered to Chicago.  Based on the
inconsistencies, Trooper Nunez said that he felt like he had reasonable
suspicion to ask for appellant=s consent to search the vehicle. 
Trooper Nunez asked appellant if he could search the vehicle, and
appellant answered, AYes.@ 

Before
conducting the search, Trooper Nunez called DPS Trooper Todd Snyder for
backup.  Trooper Nunez, Trooper Snyder,
and appellant walked to the rear of the trailer.  The doors of the trailer were locked with a padlock.  Appellant got a key out of his left front
pocket and unlocked the lock, allowing Trooper Nunez entry into the
trailer.  

Trooper
Nunez testified that neither he nor Trooper Snyder threatened appellant.  Trooper Nunez said that he and appellant
spoke in English and that appellant understood his questions and gave
appropriate responses to them.  








Trooper
Nunez was the only witness at the hearing. 
We find that Trooper Nunez=s testimony supports the trial court=s finding that appellant freely and voluntarily consented to the
search.  Trooper Nunez testified that
appellant understood his questions and verbally consented to the search.  Additionally, appellant unlocked the lock on
the trailer doors, permitting Trooper Nunez access to the trailer.  The trial court was the sole judge of
Trooper Nunez=s credibility and was free to believe or
disbelieve Trooper Nunez=s testimony.  Johnson v.
State, supra at 287.  The
trial court did not abuse its discretion in denying appellant=s motion to suppress.  Appellant=s first issue is overruled.

                                                    Sufficiency
of the Evidence at Trial

Appellant
contends that the evidence is legally and factually insufficient to support his
conviction for possession of marihuana. 
To determine if the evidence is legally sufficient, we must review all
of the evidence in the light most favorable to the verdict and determine
whether any rational trier of fact could have found the essential elements of
the crime beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307 (1979); Jackson v. State, 17 S.W.3d 664
(Tex.Cr.App.2000).  To determine if the
evidence is factually sufficient, we must review all of the evidence in a
neutral light and determine whether the evidence supporting guilt is so weak as
to render the conviction clearly wrong and manifestly unjust or whether the
evidence supporting guilt, although adequate when taken alone, is so greatly
outweighed by the overwhelming weight of contrary evidence as to render the
conviction clearly wrong and manifestly unjust.  Vasquez v. State, 67 S.W.3d 229, 236 (Tex.Cr.App.2002); Goodman
v. State, 66 S.W.3d 283 (Tex.Cr.App.2001); Johnson v. State, 23
S.W.3d 1, 11 (Tex.Cr.App.2000); Cain v. State, 958 S.W.2d 404
(Tex.Cr.App.1997); Clewis v. State, 922 S.W.2d 126 (Tex.Cr.App.1996).

In
possession of controlled substance cases, the State has the burden to show (1)
that the defendant exercised care, custody, control, or management over the
controlled substance, and (2) that the defendant knew he possessed the
controlled substance.  TEX. HEALTH &
SAFETY CODE ANN. ''
481.002(38) & 481.115 (Vernon 2003); Brown v. State, 911 S.W.2d 744,
747 (Tex.Cr.App.1995).  When the accused
is not in exclusive possession of the place where the contraband was found, the
evidence must affirmatively link the accused to the contraband.  Brown v. State, supra at 748.








Courts
have considered various factors in determining whether evidence affirmatively
links an accused to contraband, including (1) whether the accused was present
at the time of the search; (2) whether the contraband was in plain view or was
recovered from an enclosed place; (3) whether the accused was the owner of the
premises or had the right to possess the place where the contraband was found
or was the owner or driver of the vehicle in which the contraband was found;
(4) whether the accused was found with a large amount of cash; (5) whether the
contraband was conveniently accessible to the accused or found on the same side
of the vehicle as the accused was sitting; (6) whether the contraband was found
in close proximity to the accused; (7) whether a strong residual odor of the
contraband was present; (8) whether the accused possessed other contraband when
arrested; (9) whether paraphernalia to use the contraband was in view or found
on the accused; (10) whether the physical condition of the accused indicated
recent consumption of the contraband in question; (11) whether conduct of the
accused indicated a consciousness of guilt; (12) whether the accused attempted
to escape or flee; (13) whether the accused made furtive gestures; (14) whether
the accused had a special connection to the contraband; (15) whether occupants
of the premises gave conflicting statements about relevant matters; (16)
whether the accused made incriminating statements connecting himself to the
contraband; (17) the quantity of the contraband; and (18) whether the accused
was observed in a suspicious area under suspicious circumstances.  See Lassaint v. State, 79
S.W.3d 736, 740-41 (Tex.App. B Corpus Christi 2002, no pet=n); Villegas v. State, 871 S.W.2d 894, 896 (Tex.App. B Houston [1st Dist.] 1994, pet=n ref=d).  The number of factors
present is of less import than the Alogical force@ or
the degree to which the factors, alone or in combination, tend to affirmatively
link the accused to the contraband.  Hurtado
v. State, 881 S.W.2d 738, 743 (Tex.App. B Houston [1st Dist.] 1994, pet=n ref=d)(citing Whitworth v. State, 808
S.W.2d 566, 569 (Tex.App. B Austin 1991, pet=n ref=d)). 
Each case must be reviewed on its own facts for evidence of affirmative
links.  Whitworth v. State, supra
at 569.

The State
called four witnesses at the guilt/innocence phase of the trial: (1) Trooper
Nunez; (2) Trooper Snyder; (3) DPS Sergeant Kenny West; and (4) DPS Supervisor
Eddie Dickey.  Appellant did not call
any witnesses at the guilt/innocence phase of the trial.








Trooper
Nunez testified that he had been assigned to the License and Weight service of
the DPS for three or four years. 
Trooper Nunez provided testimony at trial that was similar to his
testimony at the hearing on appellant=s motion to suppress.  Trooper
Nunez also testified that the bill of lading indicated that the shipment had
come from Nogales, Arizona.  The load
was completed for shipment on November 5, 1999, at 7:10 p.m.  Appellant told Trooper Nunez that he had
come from El Paso.  Trooper Nunez said
that he believed appellant took possession of the tractor trailer in Nogales on
November 5th because appellant signed a pre-trip inspection report for the
tractor trailer at 12:00 p.m. on November 5th. 
Trooper Nunez testified that he did not know who loaded the trailer or
who had access to the trailer other than appellant. 

            Trooper
Nunez testified about the search of the trailer.  He said that the trailer was loaded from front to back to about
five feet high.  During the search,
Trooper Snyder stood behind the trailer. 
Trooper Nunez climbed on top of the load, working his way up the left
side of the load to the front of the trailer and then working his way down the
right side of the load to the back of the trailer.   Trooper Nunez said that he did not find any contraband the first
time that he was in the trailer.  After
searching the trailer, he jumped off of the load onto the pavement. 

Trooper
Nunez said that the load was on wooden pallets that were six to eight inches
high.  Trooper Snyder described some
boxes to Trooper Nunez that appeared to be on the floor of the trailer behind
the first pallet.  Trooper Nunez got
back into the trailer and went to the area that  Trooper Snyder was talking about.  Trooper Nunez discovered several brown, taped boxes on the floor.  Trooper Nunez said that, when he attempted
to lift one of the boxes, it ripped open, spilling what he thought was
marihuana.  Trooper Nunez testified
that, after the  marihuana was
discovered, Trooper Snyder placed appellant in handcuffs and advised him that
he was under arrest.       

Trooper
Nunez and Trooper Snyder weighed the contraband after it was removed from the
trailer.  They determined that it
weighed 466 pounds.  Trooper Nunez and
his supervisor, Sergeant Kenny West, took the contraband to the DPS office in
Sweetwater in their vehicles.  Sergeant
West then took the contraband to the Abilene DPS office for testing. 








Trooper
Nunez testified that a time and temperature gauge in the trailer kept track of
the temperature during the trip.  The
gauge recorded the temperature on graph paper. 
Trooper Nunez testified that he examined the gauge to see when the doors
of the trailer may have been opened and when the marihuana may have been
loaded.  He said that a rise in
temperature would indicate that the doors of the trailer had been opened.  Trooper Nunez testified that the graph started
on November 5, 1999, at 7:05 p.m.  The
temperature dropped down to about 50 degrees and remained there until a sharp
rise in temperature occurred during the early morning hours of November 7,
1999, the day Trooper Nunez stopped appellant. 
Later, the temperature went back down to the normal operating
temperature.  Trooper Nunez believed
that the sharp rise in temperature occurred as a result of the doors of the
trailer being opened. 

Trooper
Snyder testified that he stood just outside the open doors of the trailer while
Trooper Nunez conducted the search. 
Trooper Snyder said that he was about five feet away from appellant
during the search.  Appellant looked in
the trailer and carried on a general conversation with him while Trooper Nunez
conducted the search.  Trooper Snyder
testified that he shined his flashlight into the trailer so that he could see
in between the pallets.  Trooper Snyder
testified that the load was in white boxes, except there were a few brown boxes
sitting on the floor behind the first pallet. 
Trooper Snyder said that he told Trooper Nunez about the brown
boxes.  Trooper Snyder testified that,
when he told Trooper Nunez about the brown boxes, appellant became more
restless and Areal fidgety@ and that appellant would not look in the trailer anymore.  Trooper Snyder said that appellant did not
act surprised when Trooper Nunez found the marihuana.  Trooper Snyder testified that the amount of marihuana seized
would be worth, on the low end, $370,000, and, on the high end,
$6,700,000.   

Sergeant
West testified that he took the contraband to Supervisor Dickey for testing.
Supervisor Dickey analyzed and tested the substances delivered by Sergeant
West.  In his opinion, State=s Exhibits Nos. 3 through 212 contained 423.1
pounds of marihuana. 








The
evidence established several affirmative links between appellant and the
marihuana:  (1) appellant was present at
the time of the search; (2) appellant was the driver and sole occupant of the
vehicle when it was stopped; (3) appellant had been in possession of the
vehicle at least from El Paso to Sweetwater; (4) appellant had the key to the
padlock on the doors of the trailer and, therefore, access to the marihuana;
(5) the quantity and value of the marihuana; (6) appellant became more restless
and Areal fidgety@ after the troopers noticed the brown boxes; and (7) appellant did not
appear surprised when Trooper Nunez discovered the marihuana.  Appellant=s possession of the key to the location where the marihuana was found
reasonably implies his control over the marihuana.  Whitworth v. State, supra at 570 (citing Christopher
v. State, 639 S.W.2d 932 (Tex.Cr.App.1982).  The significant quantity of the marihuana implies that appellant
had knowledge of the marihuana and control over it; it is unlikely that the
owner of that much marihuana would place it in a trailer without knowing who
would be driving the vehicle.  See
Hurtado v. State, supra at 743. 
Additionally, appellant=s conduct after the troopers discovered the marihuana may be interpreted
as a consciousness of guilt.  Whitworth
v. State, supra.  We find
that these affirmative links sufficiently linked appellant to the marihuana to
support his conviction.

The
evidence is legally and factually sufficient to support appellant=s conviction.  Appellant=s second issue is overruled.

                                                                This
Court=s Ruling

The
judgment of the trial court is affirmed. 

 

TERRY
McCALL

JUSTICE

 

October 30, 2003

Do not publish.  See TEX.R.APP.P. 47.2(b).

Panel consists of:  Wright, J., and 

McCall, J., and Dickenson, S.J.[1]











     [1]Bob Dickenson, Retired Justice, Court of Appeals, 11th
District of Texas at Eastland sitting by assignment.