COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                       NOS.
 2-05-459-CR

        2-05-460-CR

        2-05-461-CR

 

 

STEVE SCOTT WEST                                                           APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM
THE 297TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

                                                   I.  Introduction








Appellant Steve Scott West appeals his convictions and
sentences for possession of pseudoephedrine with intent to manufacture
methamphetamine, manufacture of more than 400 grams of methamphetamine, and
possession of more than 400 grams of methamphetamine with intent to
deliver.  In four points, Appellant
contends that the trial court erred in denying his motion to suppress, that the
evidence at trial was legally and factually insufficient to support his
convictions, and that the State improperly commented on his failure to
testify.  We will affirm.

                               II.  Procedural and Factual Background

On September 18, 2003, a waste management employee
contacted police to report five suspicious trash bags that he had discovered
while emptying a dumpster near a Fort Worth area apartment complex.[2]  Officers from the Fort Worth narcotics unit
were dispatched to the scene and quickly discovered that the bags contained
various chemicals and other items that are commonly associated with clandestine
labs engaged in the illicit manufacture of methamphetamine.  While going through the contents of these
bags, officers also discovered a mortgage receipt and a telephone bill in
Appellant=s name, as well as a pizza delivery
receipt in the name of ABrandi West.@  Both the telephone bill and the pizza receipt
listed 4854 Ledgestone Court, Fort Worth, Texas as their corresponding service
addresses.   








Based on this information, Fort Worth police obtained and
executed a search warrant on the Ledgestone address in the early morning hours
of September 24, 2003.[3]  During the course of the search, officers
found methamphetamine in both liquid and powder forms, as well as numerous
other items typically used to manufacture methamphetamine such as iodine prill,
large quantities of cold tablets containing pseudoephedrine, sulphuric and
muriatic acid, lye, garden sprayers that had been converted into chlorine gas
generators, balance beam scales, Ziploc baggies, and multiple cans of acetone,
Coleman fuel, and methanol.  Officers
also discovered physical evidence linking Appellant to the scene which enabled
them to obtain a warrant for his arrest. 








On November 26, 2003, law enforcement officials were
dispatched to a residence located at 2408 Perkins in Arlington after receiving
a tip that Appellant was at that location.[4]  Upon arriving at the scene, officers were
unable to locate Appellant but soon learned from an employee of the homeowner
that he had been in the area.  Officers
also discovered a car in the driveway of the residence that matched the description
of the car Appellant was believed to have been driving.  After canvassing the neighborhood, officers
eventually located Appellant standing in the street several blocks away from
the Perkins address and took him into custody. 
A search incident to arrest revealed that Appellant was in possession of
a glass pipe and a set of keys that fit the locks of the car found in the
driveway of the Perkins address.  Police
impounded the car and inventoried its contents after the homeowner=s employee
requested that the car be removed from the property.[5]  During the course of the inventory search,
officers discovered several packages of pseudoephedrine along with other items,
similar to those found at the Ledgestone address, that are typically associated
with the manufacture of methamphetamine. 

Appellant was charged in three separate cases with two
counts of possession of pseudoephedrine with the intent to manufacture
methamphetamine, one count of manufacture of more than 400 grams of
methamphetamine, and one count of possession of more than 400 grams of
methamphetamine with intent to deliver.[6]  All three cases were consolidated for trial,
and a jury ultimately convicted Appellant on all four counts. 








                                            III.  Motion to Suppress

In his third point, Appellant asserts that the trial court
abused its discretion in overruling his motion to suppress the evidence police
discovered while conducting the inventory search of his car.  Specifically, Appellant argues that because
no reasonable connection existed between his arrest and the car, both the
impoundment and the subsequent inventory search were improper. 








We review a trial court=s ruling on a
motion to suppress evidence under a bifurcated standard of review.  Carmouche v. State, 10 S.W.3d 323, 327
(Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997).  In reviewing the trial court=s decision, we do
not engage in our own factual review.  Romero
v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); Best v. State,
118 S.W.3d 857, 861 (Tex. App.CFort Worth 2003,
no pet.).  The trial judge is the sole
trier of fact and judge of the credibility of the witnesses and the weight to
be given their testimony.  State v.
Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); State v. Ballard,
987 S.W.2d 889, 891 (Tex. Crim. App. 1999). 
Therefore, we give almost total deference to the trial court=s rulings on (1)
questions of historical fact, even if the trial court=s determination of
those facts was not based on an evaluation of credibility and demeanor, and (2)
application‑of‑law‑to‑fact questions that turn on an
evaluation of credibility and demeanor.  Montanez
v. State, 195 S.W.3d 101, 108‑09 (Tex. Crim. App. 2006); Johnson
v. State, 68 S.W.3d 644, 652‑53 (Tex. Crim. App. 2002); State v.
Ballman, 157 S.W.3d 65, 68 (Tex. App.CFort Worth 2004,
pet. ref=d).  But when the trial court=s rulings do not
turn on the credibility and demeanor of the witnesses, we review de novo a
trial court=s rulings on mixed questions of law and
fact.  Estrada v. State, 154
S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson, 68 S.W.3d at 652‑53.

We must uphold the trial court=s ruling if it is
supported by the record and correct under any theory of law applicable to the
case, even if the trial court gave the wrong reason for its ruling.  Armendariz v. State, 123 S.W.3d 401,
404 (Tex. Crim. App. 2003), cert. denied, 541 U.S. 974 (2004); Ross,
32 S.W.3d at 856; Romero, 800 S.W.2d at 543.








An inventory search is permissible under the federal and
state constitutions if it is conducted pursuant to a lawful impoundment.  South Dakota v. Opperman, 428 U.S.
364, 375‑76, 96 S.Ct. 3092, 3100 (1976); Benavides v. State, 600
S.W.2d 809, 810 (Tex. Crim. App. [Panel Op.] 1980).  For an impoundment to be lawful, the seizure
of the vehicle must be reasonable under the Fourth Amendment.  Benavides, 600 S.W.2d at 811.  Courts have identified a number of
circumstances in which law enforcement may reasonably impound an automobile,
such as when the driver is under custodial arrest and no other alternative is
available to insure the vehicle=s protection.  Id.; Delgado v. State, 718 S.W.2d
718, 721 (Tex. Crim. App. 1986); Daniels v. State, 600 S.W.2d 813, 815
(Tex. Crim. App. [Panel Op.] 1980). 

During the suppression hearing, the trial court heard
testimony from Fort Worth police officer Ernest Tomayo regarding the facts and
circumstances leading up to the car being impounded.  Tomayo testified that when he initially
arrived at the Perkins address, the car was unoccupied and parked in the
driveway.  Tomayo stated that he never
saw Appellant in the car or operating it in any way.  However, Tomayo explained that he spoke with
Summer Majors, an employee of the homeowner, who informed him that Appellant
had driven the car to the residence and that she no longer wanted the vehicle
on the property.  Tomayo also testified
that, after Appellant=s arrest, officers discovered a set of car
keys in Appellant=s pocket and that he then admitted driving
the car to the home.  Therefore, in
accordance with Majors=s request, police impounded the car.  Thereafter, they inventoried its contents. 








In this case, Majors, as representative of the homeowner,
advised police that Appellant could not leave his car in the driveway and
requested that the vehicle be removed from the premises.  Although these orders did not come directly
from the homeowner, it was not incumbent upon the officers to locate and speak
with the owner of the house to determine whether the car could remain in the
driveway.  See Mayberry v. State,
830 S.W.2d 176, 180 (Tex. App.CDallas 1992, pet.
ref=d).  Additionally, the officers had no duty to
independently investigate possible alternatives to impoundment absent some
objectively demonstrable evidence that alternatives did, in fact, exist.  Id. 
Therefore, in light of Appellant=s arrest and
Majors=s request that the
vehicle not remain on the property, it cannot be said that the officers acted
unreasonably in seizing Appellant=s car after he was
taken into custody.








Appellant relies on the court of criminal appeals= holding in Benavides
to support his position that because there was no reasonable connection
between his arrest and the vehicle, the impoundment was unlawful.  Benavides, 600 S.W.2d at 812.  However, Benavides is distinguishable
from the case at bar.  In Benavides,
the police found Appellant and his wife both shot on the garage floor of a
residence.  Id. at 810.  Appellant=s car was later
found locked and legally parked about two blocks from the place of the
shooting.  Id.  The vehicle was then impounded and
searched without the benefit of a search warrant.  Id. 
A suicide note found in the car was later admitted into evidence at
Appellant=s criminal trial to support the State=s theory of murder
and attempted suicide.  Id.  At trial, the officer that authorized the
impoundment testified that the car was impounded solely for safekeeping in
accordance with Dallas police departmental procedures that required all
officers to take an accused=s vehicle into
custody following the accused=s arrest.  Id. at 811.  In finding the impoundment unlawful, the
court explained that the mere arrest of a defendant cannot be construed to
authorize the seizure of his automobile when the arrest took place two or more
blocks away from the vehicle.  Id. at
812.  Rather, there must be some
reasonable connection between the arrest and the vehicle when the arrest serves
as the sole justification for the subsequent impoundment.  See id.

However, in this case, the impoundment was not premised
solely upon Appellant=s arrest. 
As outlined above, officers impounded the vehicle only after an employee
of the homeowner requested that it be removed from the premises.   Therefore, because Appellant=s vehicle was no
longer welcome to remain on the property following his arrest, the rationale in
Benavides is inapposite. 
Accordingly, we overrule Appellant=s third point. 

                                    IV.  Legal and Factual Sufficiency

In his first two points, Appellant contends that the
evidence is legally and factually insufficient to support his convictions.  Specifically, Appellant argues that the State
failed to affirmatively link him to either the pseudoephedrine found in the car
during the search at the Perkins address or the contraband discovered at the
Ledgestone residence. 

                                            A.  Standard of Review








In reviewing the legal sufficiency of the evidence to
support a conviction, we view all the evidence in the light most favorable to
the verdict in order to determine whether any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781, 2789 (1979); Hampton v. State, 165 S.W.3d 691, 693
(Tex. Crim. App. 2005).

When reviewing the factual sufficiency of the evidence to
support a conviction, we view all the evidence in a neutral light, favoring
neither party.  Watson v. State,
204 S.W.3d 404, 414 (Tex. Crim. App. 2006); Drichas v. State, 175 S.W.3d
795, 799 (Tex. Crim. App. 2005).  We then
ask whether the evidence supporting the conviction, although legally
sufficient, is nevertheless so weak that the fact‑finder=s determination is
clearly wrong and manifestly unjust or whether conflicting evidence so greatly
outweighs the evidence supporting the conviction that the fact‑finder=s determination is
manifestly unjust.  Watson, 204
S.W.3d at 414‑15, 417; Johnson v. State, 23 S.W.3d 1, 11 (Tex.
Crim. App. 2000).  To reverse on the
second ground, we must determine, with some objective basis in the record, that
the great weight and preponderance of all the evidence, though legally sufficient,
contradicts the verdict.  Watson,
204 S.W.3d at 417.








In determining whether the evidence is factually
insufficient to support a conviction that is nevertheless supported by legally
sufficient evidence, it is not enough that this court Aharbor a
subjective level of reasonable doubt to overturn [the] conviction.@  Id. 
We cannot conclude that a conviction is clearly wrong or manifestly
unjust simply because we would have decided differently than the jury or
because we disagree with the jury=s resolution of a
conflict in the evidence.  Id.  We may not simply substitute our judgment for
the fact‑finder=s.  Johnson,
23 S.W.3d at 12; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App.
1997).  Unless the record clearly reveals
that a different result is appropriate, we must defer to the jury=s determination of
the weight to be given contradictory testimonial evidence because resolution of
the conflict Aoften turns on an evaluation of
credibility and demeanor, and those jurors were in attendance when the
testimony was delivered.@ Johnson, 23 S.W.3d at 8.  Thus, we must give due deference to the fact‑finder=s determinations, Aparticularly those
determinations concerning the weight and credibility of the evidence.@  Id. at 9.

                  B.  ALinks@ Required Under
the AAffirmative Links@ Rule

In order for the State to obtain a conviction on the
manufacturing charge, it was required to prove that Appellant knowingly
manufactured methamphetamine in an amount of more than 400 grams, including
adulterants and dilutants. See Tex.
Health & Safety Code Ann. ' 481.112 (Vernon
2003). 








As
to the possession charges, the State was required to prove that Appellant  (1) exercised control, management, or care
over the substance and (2) knew the matter possessed was contraband.  Poindexter v. State, 153 S.W.3d 402,
405 (Tex. Crim. App. 2005).  When the
accused is not in exclusive possession of the place where the substance is
found, his knowledge of and control over the contraband cannot be established
unless there are additional independent facts and circumstances which
affirmatively link him to the contraband.[7]  Id. at 406.  This Aaffirmative links
rule@ is designed to
protect the innocent bystander from conviction based solely upon his proximity
to someone else=s drugs. 
Id.  Both manufacture and
possession can be established through circumstantial evidence.  McGoldrick v. State, 682 S.W.2d 573,
578 (Tex. Crim. App. 1985).  Whether the State=s evidence linking
a defendant to the contraband in question is direct or circumstantial, it must
establish, to the requisite level of confidence, that the accused=s connection with
the drug was more than just fortuitous.  Poindexter,
153 S.W.3d at 405-06.  It is not the
number of affirmative links present that is important, but rather the Alogical force@ that they create
to prove that the defendant committed the crime.  Nhem v. State, 129 S.W.3d 696, 699‑700
(Tex. App.CHouston [1st Dist.] 2004, no pet.).  

 








                                                     C.  Analysis

The record in this case contains ample evidence to
affirmatively link Appellant to the contraband found at the Ledgestone
residence and the manufacturing going on inside that home.  In addition to the evidence previously
outlined, officers at trial testified that the search of the home revealed 137
boxes of tablets containing pseudoephedrine and numerous containers housing
over 522 grams of methamphetamine. 
Additionally, officers also discovered Heet fuel and other chemicals
typically associated with the illicit manufacture of methamphetamine.  Many of these items were found in plain view
and strewn all over the house.  Although
Appellant was not at the Ledgestone home at the time of the search, officers
testified that during the search they discovered a photograph of Appellant, a
locksmith receipt made out to Appellant listing 4854 Ledgestone Court as his
address, a letter addressed to Appellant at 4854 Ledgestone Court, a check stub
bearing Appellant=s name, and gambling receipts made out to
Appellant.  Investigators also recovered
Appellant=s fingerprints from a can of acetone containing
liquid methamphetamine that was found in the home. 








Moreover, the evidence in the record also sufficiently
links Appellant to the pseudoephedrine discovered in the car parked in the
driveway of the Perkins address.  At the
time of his arrest, Appellant was in possession of the keys to the car, which
reasonably implies his control over the contraband found inside.  Christopher v. State, 639 S.W.2d 932,
935 (Tex. Crim. App. [Panel Op.] 1982), overruled on other grounds by
Preston v. State, 700 S.W.2d 227, 230 (Tex. Crim. App. 1985).  Additionally, Officer Tamayo testified that
witnesses at the scene informed him that they had, in fact, seen Appellant
operating the vehicle prior to his arrest. 
Tamayo stated that the search of the car yielded two boxes of
forty-eight-count tablets containing pseudoephedrine, as well as a bottle of
Coleman fuel, Heet, and other items similar to those recovered at the
Ledgestone address, which are commonly used to manufacture
methamphetamine.  

Viewing the evidence in the light most favorable to the
jury=s verdict, we
conclude that the evidence of affirmative links is legally sufficient to
support the verdict.  In addition, the
affirmative links evidence is not too weak or contradictory to support the
verdict beyond a reasonable doubt. 
Consequently, we overrule Appellant=s first two
points.

                          V.  Comment on Defendant=s Failure to
Testify








In his fourth point, Appellant complains that the State,
during closing argument at the punishment phase, improperly commented on his
right to remain silent, thus violating his state and federal constitutional
rights against self‑incrimination and article 38.08 of the code of
criminal procedure.  See U.S. Const. amend V; Tex. Const. art. I, ' 10; Tex. Code Crim. Proc. Ann. art. 38.08
(Vernon Supp. 2006).           

The record indicates that at punishment Appellant called
his brother, Robert West, to testify regarding their childhood upbringing and
family life. Robert testified that he and Appellant were raised in a relatively
poor family in Illinois.  Nevertheless,
he stated that after completing an apprenticeship with his father, Robert moved
to Texas and eventually became the owner of a successful concrete company in
the Dallas area.  When questioned
regarding his current relationship with Appellant, Robert stated that he has
not known his brother in the past five years. 
Robert testified that Appellant was incarcerated in 2001 and that since
that time Robert has spent a great deal of time in Illinois helping his family
overcome a series of traumatic events which have occurredCthe loss of his
sister to cancer four years ago, the death of his father as the result of a
brain aneurysm two years later, and the bad health of his mother.  In its closing, the State argued:

I
would ask you also not to make the mistake of giving this [d]efendant the benefit
of his brother=s good life and his family=s misfortune because it appears
that he wasn=t very involved in that
misfortune.  The brother was going to
Illinois to see and take care of the mother and the sister.  Where was [Appellant]? 

 

The
trial court overruled Appellant=s counsel=s objection that
the argument constituted a comment on Appellant=s failure to
testify.  








To determine if a prosecutor=s comment
constituted an impermissible reference to an accused=s failure to
testify, we must decide whether the language used was manifestly intended or
was of such a character that the jury naturally and necessarily would have
considered it to be a comment on the defendant=s failure to
testify.  Tex. Code Crim. Proc. Ann. art. 38.08; see Bustamante v.
State, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001); Fuentes v. State,
991 S.W.2d 267, 275 (Tex. Crim. App.), cert. denied, 528 U.S. 1026
(1999).  The offending language must be
viewed from the jury=s standpoint, and the implication that the
comment referred to the accused=s failure to
testify must be clear.  Bustamante,
48 S.W.3d at 765; Swallow v. State, 829 S.W.2d 223, 225 (Tex. Crim. App.
1992).  A mere indirect or implied
allusion to the defendant=s failure to testify does not violate the
accused=s right to remain
silent.  Wead v. State, 129 S.W.3d
126, 130 (Tex. Crim. App. 2004); Patrick v. State, 906 S.W.2d 481,
490-91 (Tex. Crim. App. 1995), cert. denied, 517 U.S. 1106 (1996).








In this case, we conclude that the State=s jury argument
was not a comment on Appellant=s failure to
testify.  In his closing, Appellant=s counsel argued
for leniency and asked the jury to sentence Appellant to the minimum fifteen
year prison term.  The State simply
responded to this argument by pointing out that Appellant was not entitled to
any leniency despite the difficult times that Appellant=s family had
previously endured.  The State=s comments served
to remind the jury that Appellant was incarcerated during those times and that
he should not reap the benefits of any sympathy the jury may feel for his family.  The State=s language was not
manifestly intended or of such a character that the jury would necessarily and
naturally take it as a comment on the defendant=s failure to testify.  Bustamante, 48 S.W.3d at 765.  Therefore, Appellant=s fourth point is
overruled.

                                                  VI.  Conclusion

Having overruled each of Appellant=s points, we
affirm the trial court=s judgments.

PER CURIAM

 

PANEL F:    GARDNER, J.; CAYCE, C.J.; and LIVINGSTON, J.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  March 1, 2007











[1]See Tex. R. App. P. 47.4.





[2]The bags were reported as having
several funnels sticking out of them.





[3]Although the residence was
unoccupied at the time the warrant was initially served, a female by the name
of Brandi Morris arrived during the search and was taken into custody.  





[4]Officers
also received a description of Appellant, as well as a description of the car
he was believed to be driving. 





[5]Officers conducted the inventory
search without a warrant and without Appellant=s consent. 





[6]While one of the counts of
possession of pseudoephedrine arose out of the November 2003 search conducted
on Appellant=s car at the Perkins address, all
other charges stemmed from the September 2003 search of the Ledgestone home in
Fort Worth.   





[7]The
court of criminal appeals recently decided to refer to such evidence simply as Alinks,@
noting that the term Aaffirmative@ adds
nothing to the court=s
analysis under the Aaffirmative
links rule.@  Evans v. State, 202 S.W.3d 158, 161
n.9 (Tex. Crim. App. 2006).